UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

People of the State of New York, by LETITIA JAMES, Attorney General of the State of New York,

                                Plaintiff,

          -against-

RED ROSE RESCUE, CHRISTOPHER MOSCINSKI, MATTHEW CONNOLLY, WILLIAM GOODMAN, LAURA GIES, JOHN HINSHAW, AND JOHN AND JANE DOES, the last two named being fictitious names, the real names of such persons being currently unknown but who are active in defendant organization or act in concert with the above-named individuals to engage in, or who will engage in, the conduct complained of herein,

                                Defendants.

-------------------------------------------------------------------------X

Case No.

**COMPLAINT**

## PRELIMINARY STATEMENT

1. Plaintiff the People of the State of New York, by Letitia James, Attorney General of the State of New York ("OAG"), brings this action to end Defendants' coordinated and repeated illegal conduct, ranging from criminal trespass to barricading clinic entrances in order to block access to abortion services in New York.

2. Defendants have been arrested multiple times for their unlawful acts, but despite multiple convictions across the country and within New York State, they continue to repeat their criminal misconduct.

3. To prevent any further illegal and harmful conduct, the OAG brings this action for injunctive relief and damages pursuant to the Freedom of Access to Clinic Entrances Act, 18

1

U.S.C. § 248 ("FACE") and the New York Clinic Access Act, N.Y. Civ. Rights Law § 79-m ("NY Clinic Access Act").[1]

4. The OAG seeks to enjoin Defendants, as well as all those acting in concert with them, from physically obstructing anyone attempting to access or provide reproductive health services in New York and from knowingly approaching within thirty feet of any reproductive health care facility in the state.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction to adjudicate Plaintiff's state law claims.

6. Venue lies in this district pursuant to 28 U.S.C. § 1391(b) because several of the events giving rise to the claims set forth herein have occurred and will occur in this district.

## PARTIES

**Plaintiff**

7. Plaintiff, the People of the State of New York, is represented by its chief law enforcement officer, Letitia James, Attorney General of the State of New York. Pursuant to FACE and the NY Clinic Access Act, the Attorney General is authorized to commence a civil action where, as here, the Attorney General has reasonable cause to believe that persons within the State of New York may be injured by conduct that constitutes a violation of those laws.

---

[1] The NY Clinic Access Act is codified in two parts of New York law: the Penal Law defines the prohibited conduct, N.Y. Penal Law §§ 240.70-240.71, and the Civil Rights Law authorizes the Attorney General to seek an injunction against that conduct, N.Y. Civ. Rights Law § 79-m.

**Defendants**

8. Red Rose Rescue is an anti-abortion group whose members conspire to illegally trespass into private medical facilities that perform abortions and shut down or physically obstruct the provision of all reproductive health services, refusing all requests to leave by staff and law enforcement.

9. Criminal trespass at reproductive health facilities is not incidental to Red Rose Rescue members' activism, but rather is the core mission of their group. As they explain in their Mission Statement, "During a Red Rose Rescue, a team of pro-lifers enter the actual places" where abortions are performed and "will not leave" but "must be taken away."[2] They have explained that they do this because "our experience is, that as long as there is a pro-life presence in the abortion clinic, the abortions are halted." Their Code of Conduct also anticipates that members will be arrested for this unlawful activity and provides that they will not plead guilty if and when placed on trial; they will avoid pleading "no contest"; and they will not pay fines or do community service, nor agree with the conditions of probation.[3] Despite numerous arrests and convictions, they have publicly stated that "Rescues will continue" as long as abortion is legal in any state. A leader of the organization has stated that they are recruiting new "rescuers," especially young people.

10. Even other anti-abortion groups have distanced themselves from Red Rose Rescue and have characterized the latter's conduct as "haranguing," "aggressive," and "intimidating."[4] In legal filings, other anti-abortion activists have explicitly contrasted their activities with the Red

---

[2] *Mission Statement*, Red Rose Rescue, https://www.redroserescue.com/about.
[3] *Id.*
[4] *A Defense of Red Rose Rescue against Accusations by Lauren Muzkya of Sidewalk Advocates of Life*, Red Rose Rescue, https://www.redroserescue.com/defense-of-rrr.

3

Rose invasion in Westchester, in which, as they allege, "[m]embers of the Red Rose Rescue group forced their way into a reproductive health care facility in order to stage a sit-in demonstration, blocked access to the facility's entrance, and physically occupied the facility's waiting room for a number of hours, refusing to leave in an attempt to prevent individuals from obtaining reproductive health care services." *Hulinsky v. Cnty. of Westchester*, No. 22-CV-06950 (PMH), 2023 WL 3052267, at *5 (S.D.N.Y. Apr. 24, 2023).

11. Red Rose Rescue takes pride in distinguishing its activities from the more mainstream "sidewalk counseling" that may not break the law. As one of the founders of Red Rose Rescue has stated, its members believe that refusing to break the law is "hardly a virtue."[5]

12. Christopher Moscinski is a 52-year-old man who resides in the Bronx and claims to have been arrested at least 31 times for interfering with patients' rights to access abortion, including at least nine times as a member of Red Rose Rescue.

13. Matthew Connolly is a 40-year-old man who resides in Minnesota and has been arrested at least ten times for interfering with patients' rights to access abortion as a member of Red Rose Rescue, including in New York.

14. William Goodman is a 52-year-old man who resides in Wisconsin and has been arrested at least a dozen times for interfering with patients' rights to access abortion as a member of Red Rose Rescue, including in New York.

15. Laura Gies is a 57-year-old woman who resides in Pennsylvania and has been arrested at least four times for interfering with patients' rights to access abortion as a member of Red Rose Rescue, including in New York.

---

[5] *Id.*

16. John Hinshaw is a 67-year-old man who resides in New York and has been arrested at least three times for interfering with patients' rights to access abortion as a member of Red Rose Rescue, including in New York.

## LEGAL STANDARD

17. Under FACE, 18 U.S.C. § 248(a)(1), it is illegal to use physical obstruction to intentionally intimidate and/or interfere with, or attempt to intimidate and/or interfere with, a person because that person has obtained or provided, or seeks to obtain or provide, reproductive health services.

18. Under the NY Clinic Access Act, N.Y. Penal Law § 240.70(l), it is similarly illegal to use physical obstruction to intentionally intimidate, and/or interfere with, or attempt to intimidate and/or interfere with, a person because that person has obtained or provided, or seeks to obtain or provide, reproductive health services, or in order to discourage that person from obtaining or providing reproductive health services.

## FACTUAL ALLEGATIONS

I. **Defendants' Unlawful Conduct in New York**

    a. **Defendants Invaded All Women's Care in Manhasset**

19. On April 24, 2021, Defendants Moscinski, Gies, and Hinshaw, as a part of Red Rose Rescue, invaded All Women's Care in Manhasset, New York at around 8am. Red Rose Rescue took credit for this invasion online and described the Defendants as "Red Rose Rescuers."[6]

20. All Women's Care provides reproductive health services, including well-woman exams, pap smears, and abortions, among others.

---

[6] Red Rose Rescue, (2) Red Rose Rescue | Facebook (February 3, 2022).

21. All Women's Care does not accept walk-ins but only sees patients by appointment. In the spring of 2021, the clinic had precautions in place to screen patients for Covid before allowing them into the waiting room, and it did not permit relatives or companions to accompany patients inside.

22. In order to access the clinic, a female member of Red Rose Rescue made an appointment at All Women's Care and misrepresented herself as a patient when she had no intention to receive any of the clinic services. She checked in with the receptionist and then went to a side entrance of the building to let in the rest of the Defendants.

23. Defendant Moscinski entered the clinic in plain clothes, carrying a black duffel bag. Clinic staff and patients were terrified that he might have weapons inside the bag.

24. Defendant Moscinski then pulled a robe out of the bag and proceeded to change into it. He has admitted that he entered in street clothes because he anticipated that the staff would not have allowed him in if they saw him wearing his robe.

25. Defendants occupied the waiting room, rendering it unusable by patients. To ensure safety, the staff had to instruct patients to leave the clinic and wait in their cars. Defendants refused repeated requests from clinic staff to leave.

26. Clinic staff then called 911, and the police arrived. Defendants refused repeated requests by the police to leave.

27. Police officers told Defendants that they would be arrested if they did not leave.

28. Defendants Moscinski, Hinshaw and Gies then went limp and dropped to the floor, and police had to carry them out. Defendant Gies lay on the floor, screaming, "I am not leaving."

29. Defendant Gies has admitted that her goal was to stay inside the clinic as long as she could in order to stop abortions from being performed that day.

30. Defendant Moscinski has admitted that he refused to leave unless the medical staff would leave the building.

31. Defendant Hinshaw has admitted that he refused to leave unless the police would stop the staff from performing abortions.

32. Defendants' invasion of the clinic disrupted the provision of reproductive health services for approximately two hours.

33. Defendants Moscinski, Gies, and Hinshaw were subsequently convicted of trespassing and second degree obstructing governmental administration.

34. On April 17, 2023, Defendant Hinshaw was sentenced to thirty days for obstruction and fifteen days for trespassing, to run concurrently, with three years of probation.

35. On that date, Defendants Moscinski and Gies were in jail for trespassing at a clinic in Michigan and so were not sentenced along with Defendant Hinshaw. Their sentencing is currently scheduled for June 30, 2023.

**b. Defendants Invaded All Women's Health and Medical Services in White Plains**

36. On November 27, 2021, Defendants Moscinski, Goodman, and Connolly, along with several other members of Red Rose Rescue, invaded All Women's Health and Medical Services in White Plains, New York. Again, Red Rose Rescue took credit for this invasion online and described the Defendants as "Red Rose Rescuers."[7]

37. In order to access the clinic, a female accomplice who was a member of Red Rose Rescue, made an appointment and misrepresented herself as a patient seeking an abortion. Once

---

[7] Red Rose Rescue, (2) Red Rose Rescue | Facebook (February 2, 2022).

she falsely identified herself as a patient and was admitted into the clinic, she then held the door open for other Red Rose Rescue members to rush into the clinic.

38. The Red Rose Rescue members then refused to leave the clinic's private property when staff instructed them to. They said that they wouldn't leave unless the clinic stopped performing abortions.

39. At trial, their attorney admitted that the Defendants did not counsel a single woman who was at the clinic for an abortion.

40. Defendants Moscinski, Goodman, and Connolly remained inside for two hours and refused repeated requests from staff and police that they leave.

41. Defendants Moscinski and Goodman disrupted the clinic's operations and patient services by occupying the waiting room, rendering it unusable, forcing patients to wait in the hallways.

42. Defendant Connolly propped open a door, which was typically locked, and created an obstacle by kneeling in front of it and then lying down on the floor.

43. Defendants claimed that as long as they were present at the clinic, no abortions could occur. They attempted to negotiate their departure with clinic staff and the police by insisting that they would leave if and only if the clinic ceased performing abortions. Defendant Moscinski was recorded on a police officer's body camera telling the officer that they would not leave because, he believed, "Once we are removed, this place will go back to normal operations."

44. Indeed, no patients could see their doctors until later in the day, when Defendants were finally removed.

45. The occupation only ended when Defendants Moscinski, Goodman, and Connolly were arrested for trespassing. Defendants refused to move and had to be carried out of the clinic by police.

46. On August 2, 2022, Defendants Moscinski, Goodman, and Connolly were sentenced to three months in jail for criminal trespass.

47. Goodman has called the criminal conviction a "badge of honor."

48. Moscinski has expressed his intention to continue invading clinics, and not "stop at some artificial property line."

### c. Defendant Moscinski barricaded the entrance to Planned Parenthood in Hempstead.

49. In addition to invading clinics in order to interfere with access to abortion, Defendant Moscinski has barricaded a clinic in New York in an attempt to shut down its provision of reproductive health services.

50. The Planned Parenthood clinic in Hempstead, New York, provides reproductive health services for all people, regardless of their ability to pay.

51. On July 7, 2022, Defendant Moscinski placed six industrial locks and chains on the front gates of the Planned Parenthood clinic in Hempstead. The locks blocked both the driveway into the parking lot and the pedestrian gates so that staff and patients could not access the clinic.

52. Defendant Moscinski also glued some of the locks shut with super glue.

53. Clinic staff could not enter the parking lot nor could employees from the neighboring business, Affordable Tires and Wheels.

54. When the police arrived, they were unable to remove the locks with bolt cutters.

55. The fire department was called in to use special equipment to cut the locks. The first saw they attempted to use did not work, and they ultimately had to retrieve a battery-operated saw to cut and remove the locks. It took several minutes to cut each lock.

56. Approximately ten vehicles were waiting to enter the parking lot when the gates were opened. It took over an hour to open the gates.

57. Meanwhile, the incident caused traffic congestion on the main road.

58. After the locks were removed and the gates were opened, Defendant Moscinski laid down across the driveway and refused to move to allow cars to enter.

59. As the police arrested him, Defendant Moscinski again went limp, and multiple police officers had to carry him out. He told the police officer, "At least I slowed them down some—I slowed them down a little bit today."

60. Moscinski has admitted to this conduct and stated that "the main motivation was to keep that Planned Parenthood closed for as long as possible." His attorney has pointed out that Moscinski made that recorded statement, which was later posted online, after the incident but before he knew that he would be prosecuted for a FACE Act violation.

61. About five patients had their appointments delayed due to Moscinski's barricade of the entrance.

62. Defendant Moscinski was arrested by the FBI and later convicted of a criminal violation of the FACE Act. He is scheduled to be sentenced on June 27, 2023.

**II.     Defendants' Repeated Clinic Invasions Across the Country**

63. Defendants Moscinski, Goodman, Connolly, Gies, Hinshaw, and members of Red Rose Rescue have invaded numerous reproductive health facilities and they continue to do so despite being repeatedly arrested and convicted of trespassing.

64. On September 15, 2017, six members of Red Rose Rescue, including Defendant Moscinski and Joan Andrews Bell, invaded Alexandria Women's Health Clinic in Alexandria, Virginia. All were found guilty of trespassing.

65. The same day, five members of Red Rose Rescue invaded Northland Family Planning Center in Sterling Heights, Michigan. Four of them remained until police arrived, were arrested, and found guilty of trespassing.

66. Also on September 15, 2017, two Red Rose Rescue members invaded the University of New Mexico Center for Reproductive Health in Albuquerque, New Mexico.

67. On December 2, 2017, three Red Rose Rescue members: Stephen Imbarrato, Julia Haag, and Joan McKee were arrested for invading Capital Women's Services in Washington D.C.

68. The same day, a dozen members of Red Rose Rescue, including Lauren Handy, Linda Mueller, and Michael Webb, again invaded Alexandria Women's Health Clinic in Alexandria, Virginia. When the police arrived to arrest Handy, Mueller, and Webb for trespassing, they went limp, and the officers carried them out in wheelchairs and on stretchers. Even after being arrested, Hardy stated that she does not recognize the "authority of the government."

69. Also on December 2, 2017, nine members of Red Rose Rescue, including Defendants Goodman and Connolly, along with Patrice Woodworth, Robert Kolavy, and Monica Migliorino Miller invaded Woman's Center in West Bloomfield, Michigan. All five were arrested and charged with trespass and resisting arrest.

70. On May 26, 2018, Defendant Moscinski, along with Lauren Handy, Adele Gilhooly, and another member of Red Rose Rescue invaded Capital Women's Services in Washington D.C. Defendant Moscinski, Handy, and another woman were arrested.

71. On June 1, 2018, Defendant Goodman and Monica Miller were arrested at Women's Center of Michigan in Sterling Heights, Michigan for violating the terms of their probation and sentenced to 45 days in jail. Miller later expressed online her lack of respect for the court order that she remain 500 feet from all abortion clinics, writing "Thank God we defied that 500' foot probation condition! I was indeed at the right place at the right time despite Judge Barron's 500 foot restriction" and "[i]t's worth going to jail. . . ." Miller had told a reporter the prior day that she intended to publicly violate her probation by protesting at the same clinic.

72. On July 24, 2018, Defendants Moscinski and Goodman, along with Dave Nix and another member of Red Rose Rescue invaded Capital Women's Services in Washington D.C. for two hours until they were carried out by the police. Stephen Imbarrato, a Red Rose Rescue member who has been arrested numerous times, stated that invasions will "without a doubt" continue so long as abortions continued to be performed.

73. On September 29, 2018, Defendants Moscinski, Connolly, and Goodman, along with Adele Gilhooly, Patrice Woodworth, and another member of Red Rose Rescue invaded Pilgrim Medical Center in Montclair, New Jersey. Five of them, including Defendants Moscinski, Connolly, and Goodman were arrested and carried out by the police. In describing the incident, Red Rose Rescue members expressed hope that the "commotion and presence of numerous law enforcement officers" will cause clinic patients to be "daunted" and to "just drive away."

74. On December 22, 2018, Defendants Moscinski, Goodman, and Connolly, along with Red Rose Rescue member Patrice Woodworth invaded Planned Parenthood Trenton Health Center in Trenton, New Jersey. All four were arrested and charged with trespassing.

75. On March 19, 2019, Red Rose Rescue members Stephen Imbarrato, Lauren Handy, Grace Woo, Bud Shaver, and Linda Mueller invaded Washington Surgi-Clinic in Washington, D.C. Imbarrato, Handy, and Shaver were arrested. This was the third time that Imbarrato was arrested for participating in a Red Rose Rescue invasion at the same clinic.

76. On June 7, 2019, seven members of Red Rose Rescue, including Defendants Goodman and Connolly, along with Monica Migliorino Miller, Lauren Handy, and Patrice Woodworth invaded Women's Center of Flint and Saginaw in Flint, Michigan. Defendants Goodman, Connolly, Handy, and Woodworth were arrested.

77. On June 13, 2019 Defendants Moscinski and Goodman, along with Dave Nix and another member of Red Rose Rescue invaded Garden State Gynecology in Morristown, New Jersey. They were arrested and had to be carried out by the police.

78. On January 18, 2020, five members of Red Rose Rescue, including Defendants Mocinski, Connolly, and Goodman, along with Joan Andrews Bell and Adele Gilhooly invaded Options for Women in Plainfield, New Jersey. All except for Gilhooly were arrested and had to be carried out by the police.

79. On April 30, 2020, Defendant Goodman and Red Rose Rescue member Tony Puckett invaded the Delta Clinic of Baton Rouge in Baton Rouge, Louisiana and were arrested after refusing to leave the clinic's private property.

80. On May 13, 2020, six members of Red Rose Rescue invaded the Heritage Clinic in Grand Rapids, Michigan. Two were arrested and charged with trespassing.

81. On May 14, 2020, Defendants Moscinski and Goodman, along with three other members of Red Rose Rescue, invaded Capital Women's Services in Washington D.C. Defendant Moscinski was arrested.

82. The same day, two members of Red Rose Recue, Stephen Imbarrato and Linda Mueller, invaded Washington Surgi-Clinic in Washington, D.C. and were arrested.

83. On October 22, 2020, Defendants Goodman and Hinshaw, along with Red Rose Rescue members Lauren Handy, Jonathan Darnel, Jay Smith, Paulette Harlow, Jean Marshall, Heather Idoni, Joan Bell, and Herb Garaghty, invaded Washington Surgi-Clinic in Washington, D.C. After forcefully invading the clinic, the Red Rose Rescue members blockaded two clinic doors using their bodies, furniture, chains, and ropes. All were indicted for conspiracy to violate FACE.

84. On June 4, 2021, Defendants Moscinski and Gies, along with Red Rose Rescue members Stephanie Berry, and Audrey Whipple invaded Northeast Ohio Women's Center in Cuyahoga Falls, Ohio. When they refused to leave, all were arrested and charged with trespassing.

85. On June 5, 2021, Defendant Goodman, along with Lauren Handy and Monica Migliorino Miller invaded the Planned Parenthood – Bedford Heights Health Center in Bedford Heights, Ohio. Handy and Migliorino Miller were arrested and charged with trespassing.

86. On August 27, 2021, seven Red Rose Rescue members, including Defendants Connolly, Goodman, and Gies invaded the Planned Parenthood – Locust Street Surgical Center in Philadelphia, Pennsylvania. Defendant Connolly then hid in a bathroom. Fearful that Connolly could be a threat to himself and others, clinic staff evacuated the clinic. At least two Red Rose Rescue members refused to evacuate and remained in the clinic. A SWAT team was

eventually called to open the bathroom door and remove Defendant Connolly. Because of the disruption, the clinic was forced to cease operations for the rest of the day.

87. On August 27, 2021, Defendant Moscinski and Hinshaw, along with Red Rose Rescue member Linda Mueller, invaded the Planned Parenthood – West Chester Health Center in West Chester, Pennsylvania. All three refused to leave and were arrested.

88. On November 16, 2021, six members of Red Rose Rescue, including Lauren Handy, invaded the Alexandria Women's Health Clinic in Alexandria, Virginia. All were arrested and sentenced to jail for trespassing.

89. On April 23, 2022, ten members of Red Rose Rescue, including Defendants Moscinski, Connolly, and Gies, along with Pam Gesund, Robert Kovaly, Audrey Whipple, Monica Miller, Bernadette Patel, Elizabeth Wagi, and Jacob Gregor, invaded Northland Family Planning – Southfield in Southfield, Michigan. Defendants Connolly, Moscinski, and Gies, along with Monica Miller, Elizabeth Wagi, and David Gregor were arrested and had to be removed from the clinic in wheelchairs. They were all found guilty of trespassing and resisting arrest. Defendants Connolly and Moscinski, along with David Gregor, were also found guilty of interference with a business.

### III. Defendants Intend to Interfere with Clinics Because They Provide Abortions

90. Defendants make clear that they are invading reproductive health facilities because patients are seeking and staff are providing abortions.

91. Defendants have repeatedly stated that they carry out their unlawful activities because they do not want patients to access or doctors to provide abortions.

15

### IV.   Defendants' Acts of Physical Obstruction

92.   When Defendants Moscinski, Connolly, Gies, and Hinshaw invaded All Women's Care as part of Red Rose Rescue, they occupied the waiting room, rendering it unusable, and caused the staff to evacuate the building so that the police could search the premises.

93.   When Defendants Moscinski, Goodman, and Connolly invaded All Women's Health and Medical Services as part of Red Rose Rescue, they occupied the waiting room, rendering it unusable, and one of them used his body to create an obstacle across one of the office doorways.

94.   When Defendant Moscinski locked the front gates at the Hempstead Planned Parenthood, he physically obstructed staff and patients' ability to access the clinic.

95.   When Defendant Moscinski laid down across the driveway at the Hempstead Planned Parenthood, he physically obstructed staff and patients' ability to access the clinic.

### V.   Harm Caused by Defendants' Unlawful Conduct

96.   Defendants' ongoing unlawful conduct interferes with individual patient care and thus harms patients seeking reproductive health services.

97.   By invading All Women's Health and Medical Services and refusing to leave, Defendants have admittedly attempted to intimidate and interfere with individuals who obtain or seek to obtain reproductive health care, as well as those who provide or seek to provide the same, and they in fact succeeded in doing so.  Defendants have caused and will continue to cause harm to patients and staff at reproductive health facilities throughout the state of New York, as they have vowed not to abide by the law but instead to continue to trespass at any and all private medical facilities that perform abortions.

98. By barricading the gates and laying his body in front of cars at the Hempstead Planned Parenthood, Defendant Moscinski has admittedly attempted to intimidate and interfere with individuals who obtain or seek to obtain reproductive health care, as well as those who provide or seek to provide the same, and in fact succeeded in doing so. He has caused and will continue to cause harm to patients and staff at reproductive health facilities throughout the state of New York, as he has vowed not to abide by the law but instead to try to shut down any and all reproductive health facilities that provide abortions.

99. Defendants' violations of law have been willful and malicious and in reckless and wanton disregard of Plaintiff's rights under the law.

100. Plaintiff has no adequate remedy at law.

## CAUSES OF ACTION

### First Cause of Action
### Violations of the Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248(a)(1)

101. The OAG re-alleges and incorporates by reference the allegations in the foregoing paragraphs of this complaint as though fully set forth herein.

102. Defendants have violated federal law by intentionally causing physical obstruction in order to intimidate and interfere with, and to attempt to intimidate and interfere with patients in New York because the patients have obtained or sought to obtain reproductive health services, and with staff at clinics because those persons have sought to provide or provided reproductive health services.

103. Defendants have violated federal law by intentionally causing physical obstruction in order to intimidate and interfere with, and to attempt to intimidate and interfere with patients in

New York in order to discourage patients from obtaining reproductive health services, and staff from providing such reproductive health services.

104. As a result of Defendants' violations, patients and staff of reproductive health facilities in New York suffered harm.

105. The OAG seeks declaratory and injunctive relief remedying these ongoing violations.

## Second Cause of Action
### Violations of the NY Clinic Access Act, N.Y. Penal Law § 240.70(l)(a)-(b)

106. The OAG re-alleges and incorporates by reference the allegations in the foregoing paragraphs of this complaint as though fully set forth herein.

107. Defendants have violated New York state law by intentionally causing physical obstruction in order to intimidate and interfere with, and to attempt to intimidate and interfere with, patients in New York because the patients have obtained or sought to obtain reproductive health services, and with staff at clinics because those persons have sought to provide or provided reproductive health services.

108. Defendants have violated New York state law by intentionally causing physical obstruction in order to intimidate and interfere with, and to attempt to intimidate and interfere with patients in New York in order to discourage patients from obtaining reproductive health services, and staff from providing such reproductive health services.

109. As a result of Defendants' violations, patients and staff of reproductive health facilities in New York suffered harm.

110. The OAG seeks declaratory and injunctive relief remedying these ongoing violations.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court enter a judgment and order:

A. declaring that Defendants' actions as described above violate FACE and the NY Clinic Access Act;

B. permanently enjoining Defendants from violating FACE and the NY Clinic Access Act, and ordering injunctive relief necessary and appropriate to remedy Defendants' past violations of law and to ensure that Defendants do not create a physical obstruction to injure, intimidate, discourage and/or interfere with or attempt to injure, intimidate, discourage and/or interfere with persons who are seeking to obtain or provide reproductive health care in New York, and to create a buffer zone around all reproductive health facilities in the state, extending out thirty feet from the buildings themselves and encompassing all clinic entrances and parking lots, where no protest activity may occur;

C. directing each Defendant to pay statutory or compensatory damages for each violation as authorized by FACE, 18 U.S.C. § 248(c)(3)(B);

D. directing each Defendant to pay civil penalties as authorized by FACE, 18 U.S.C. § 248(c)(3)(B);

E. awarding Plaintiff reasonable costs and expenses incurred in the prosecution of this action;

F. retaining jurisdiction of this matter to ensure full, adequate, and effective implementation of the relief ordered by the Court; and

G. awarding Plaintiff such additional relief as is just and proper.

Dated: New York, New York
June 8, 2023

LETITIA JAMES
Attorney General of the State of New York


By:   /s/ Sandra Pullman
      Sandra Pullman
      Senior Counsel, Civil Rights Bureau
      Julia Toce
      Assistant Attorney General
      Galen Sherwin
      Special Counsel for Reproductive Justice
      Travis England
      Deputy Chief, Civil Rights Bureau
      Office of the New York State Attorney General
      28 Liberty St., 20th Floor
      New York, NY 10005
      (212) 416-8250