UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

People of the State of New York, by LETITIA JAMES, Attorney General of the State of New York,

Plaintiff,

-v-

RED ROSE RESCUE, CHRISTOPHER MOSCINSKI, MATTHEW CONNOLLY, WILLIAM GOODMAN, LAURA GIES, JOHN HINSHAW, AND JOHN AND JANE DOES, the last two named being fictitious names, the real names of such persons being currently unknown but who are active in Red Rose Rescue or act in concert with the above-named individuals or organization to engage in, or who will engage in, the conduct complained of herein,

Defendants.

23 Civ. 4832 (KMK)

# STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: (212) 637-2781
Email: Amanda.Lee2@usdoj.gov

AMANDA LEE
Assistant United States Attorney
– Of Counsel –

## TABLE OF CONTENTS


INTEREST OF THE UNITED STATES ........................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND................................................................ 2

I. The Alleged Obstruction of All Women's Care in Manhasset .......................................... 3

II. The Alleged Obstruction of All Women's Health and Medical Services in White Plains .. 3

III. The Alleged Blockade of Planned Parenthood in Hempstead ........................................... 3

DISCUSSION ........................................................................................................ 4

I. The FACE Act's Broad Prohibition Against Physical Obstructions of Clinics Encompasses Temporary and Partial Obstructions, as well as Activities Inside and Outside Clinics. ........................................................................................ 5

A. The FACE Act's Definition of "Physical Obstruction" Includes Acts That Temporarily Block Access To or From a Facility. ...................................................... 6

B. Individuals Who Partially or Incompletely Block Access To or From a Facility Cause a Physical Obstruction in Violation of the FACE Act. ................................................ 7

C. The FACE Act Forbids Activities Both Inside and Outside Facilities that Render Passage To or From a Facility Unreasonably Difficult. ............................................... 8

1. The FACE Act Applies to Activities Inside a Facility. ......................................... 8

2. Defendants Misread the Text and Purpose of the FACE Act. ............................. 13

CONCLUSION ...................................................................................................... 16

# TABLE OF AUTHORITIES

**CASES** **Page**

*Am. Life League, Inc. v. Reno*,
47 F.3d 642 (4th Cir. 1995) ........................................ 4, 11

*Disabled in Action of Metro. New York v. Hammons*,
202 F.3d 110 (2d Cir. 2000)........................................ 11

*FemHealth USA, Inc. v. Williams*,
2022 WL 4241269 (M.D. Tenn. Sept. 14, 2022)........................................ 7

*Jingrong v. Chinese Anti-Cult World All. Inc.*,
16 F.4th 47 (2d Cir. 2021) ........................................ 11

*Madsen v. Women's Health Ctr., Inc.*,
512 U.S. 753 (1994)........................................ 14

*Moskal v. United States*,
498 U.S. 103 (1990)........................................ 15

*New York ex rel. Spitzer v. Cain*,
418 F. Supp. 2d 457 (S.D.N.Y. 2006)........................................ 5, 6, 7, 14

*New York ex rel. Spitzer v. Operation Rescue Nat'l*,
273 F.3d 184 (2d Cir. 2001)........................................ 5, 6

*People of State of New York ex rel. Spitzer v. Kraeger*,
160 F. Supp. 2d 360 (N.D.N.Y. 2001)........................................ *passim*

*Scheidler v. Nat'l Org. for Women, Inc.*,
537 U.S. 393 (2003)........................................ 16

*United States v. Dauray*,
215 F.3d 257 (2d Cir. 2000)........................................ 8. 10, 15

*United States v. DiCristina*,
726 F.3d 92 (2d Cir. 2013)........................................ 15

*United States v. Gregg*,
32 F. Supp. 2d 151 (D.N.J. 1998) ........................................ 5, 7, 12

*United States v. Hart*,
212 F.3d 1067 (8th Cir. 2000) ........................................ 4

*United States v. Lindgren*,
883 F. Supp. 1321 (D.N.D. 1995) ..... 6

*United States v. Mahoney*,
247 F.3d 279 (D.C. Cir. 2001) ..... 7, 12, 14

*United States v. Roach*,
947 F. Supp. 872 (E.D. Pa. 1996) ..... 8

*United States v. Scott*,
958 F. Supp. 761 (D. Conn. 1997) ..... 6

*United States v. Soderna*,
82 F.3d 1370 (7th Cir. 1996) ..... 4, 8

*United States v. White*,
893 F. Supp. 1423 (C.D. Cal. 1995) ..... 6

*Williams v. MTA Bus Co.*,
44 F.4th 115 (2d Cir. 2022) ..... 10

**STATUTES AND REGULATIONS**

18 U.S.C. § 248 ..... *passim*

28 U.S.C. § 517 ..... 1

28 C.F.R. § 0.50 ..... 1

## INTEREST OF THE UNITED STATES

Congress passed the Freedom of Access to Clinic Entrances Act ("FACE Act"), 18 U.S.C. § 248, to prohibit violent, threatening, damaging, and obstructive conduct intended to injure or intimidate providers of reproductive health services or their patients, or otherwise to interfere with the right to seek, obtain, or provide lawful reproductive health services.

The United States of America has a strong interest in enforcing federal laws that grant individuals rights and protections, including the right to provide and receive reproductive health services, such as abortion care, free from interference. This litigation directly implicates these interests, as it concerns protecting staff and patients from those seeking to physically obstruct their provision of and access to reproductive health services.

This litigation also implicates the United States' interest in supporting the proper and uniform application of the law. The United States enforces the FACE Act's criminal provisions, 18 U.S.C. §§ 248(a), (b), and brings civil suits when there is reasonable cause to believe that a person or entity may suffer injury as a result of violations of the Act, 18 U.S.C. § 248(c)(2).

Accordingly, the United States respectfully submits this Statement of Interest, pursuant to the Attorney General's statutory authority under 28 U.S.C. § 517,[1] to advise the Court that the

[1] Under 28 U.S.C. § 517, "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." *Id.* The authority of the Attorney General in civil rights matters is delegated to the Assistant Attorney General for Civil Rights (the "AAG"), who conducts, handles, and supervises the "[e]nforcement of all Federal statutes affecting civil rights" and the "authorization of litigation in such enforcement, including . . . civil actions and proceedings on behalf of the Government," as well as the "[c]oordination within the Department of Justice of all matters affecting civil rights." 28 C.F.R. § 0.50 (a), (d). The United States Attorney's Office for the Southern District of New York coordinated on this Statement of Interest with the Civil Rights Division of the Department of Justice, and on September 19, 2023, the AAG approved the filing of the Statement of Interest, consistent with 28 C.F.R. § 0.50 and Section 8-2.170 of the Justice Manual. Section 8-2.170 provides: "The Department of Justice is

FACE Act's broad prohibition against physical obstructions of access to reproductive health facilities covers temporary and incomplete obstructions, as well as activities both inside and outside such facilities. Defendants' assertion that the FACE Act does not apply to non-violent activities inside facilities is belied by the purpose and text of the statute and would undermine the very goal of the FACE Act.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 8, 2023, the Attorney General for the State of New York (the "State" or "Plaintiff") filed a complaint against Red Rose Rescue, Christopher Moscinski, Matthew Connolly, William Goodman, Laura Gies, John Hinshaw, and John and Jane Does (collectively, "Defendants") for violations of the FACE Act. ECF No. 1 ("Complaint"). The State alleges that Defendants violated the FACE Act when they, in various groups, invaded and/or barricaded three reproductive health care centers in New York: All Women's Care in Manhasset, All Women's Health and Medical Services in White Plains, and Planned Parenthood in Hempstead. Compl. ¶¶ 19-62. On July 26, 2023, the State sought an Order to Show Cause for a Preliminary Injunction to enjoin Defendants from being present in an area extending thirty feet from any reproductive health facility in New York State during the pendency of this action. ECF No. 24.

To provide context regarding the conduct at issue in this case, as it relates to the United States' interest in interpreting the FACE Act, the United States sets forth the following allegations in the Complaint.

---

authorized under 28 U.S.C. §§ 516 and 517 to file statements of interest in federal court cases in which the United States has an interest. The Assistant Attorney General for the Civil Rights Division, or his or her designee, may approve the filing of a statement of interest."

## I. The Alleged Obstruction of All Women's Care in Manhasset

Plaintiff alleges that on April 24, 2021, Defendants Moscinski, Gies, and Hinshaw occupied the waiting room of All Women's Care, rendering it unusable by patients. Compl. ¶¶ 19, 25, 92. Moscinski entered the clinic in plain clothes, carrying a black duffel bag; clinic staff and patients were allegedly terrified that the bag contained weapons. *Id.* ¶ 23. Patients were instructed by staff to leave and wait in their cars, and staff called 911 and evacuated the building so that the police could search the premises. *Id.* ¶¶ 25, 26, 92. Defendants Moscinski, Gies and Hinshaw refused requests from clinic staff and police to leave; upon being notified that they would be arrested, Defendants went limp, and dropped to the floor and were carried out by the police. *Id.* ¶¶ 25-28. Gies lay on the floor, screaming, "I am not leaving." *Id.* ¶ 28. Defendants' occupation of the facility disrupted the provision of health services for approximately two hours. *Id.* ¶ 32.

## II. The Alleged Obstruction of All Women's Health and Medical Services in White Plains

Plaintiff alleges that on November 27, 2021, Defendant Moscinski, this time with Defendants Goodman and Connolly, along with several other members of Red Rose Rescue, invaded All Women's Health and Medical Services for approximately two hours. *Id.* ¶¶ 36, 40. Moscinski and Goodman occupied the waiting room upstairs, rendering the waiting room unusable and forcing patients to wait in the hallways. *Id.* ¶ 41. Connolly propped open a door to the entrance of the facility, kneeling in front of it and then lying down on the floor. *Id.* ¶ 42. Defendants refused requests from clinic staff and police to leave and had to be carried out of the facility by police. *Id.* ¶¶ 40, 45. Patients were unable to see their doctors until Defendants were removed. *Id.* ¶ 44.

## III. The Alleged Blockade of Planned Parenthood in Hempstead

Plaintiff alleges that on July 7, 2022, Defendant Moscinski placed six industrial locks and chains on the front gates of the Planned Parenthood in Hempstead. *Id.* ¶ 51. Moscinski glued

some of the locks shut with super glue, and the locks blocked both the driveway into the parking lot and the pedestrian gates, so that neither staff nor patients could access the facility. *Id.* ¶¶ 51, 52. Once the fire department cut the locks open, Moscinski laid down in the driveway and refused to move to allow cars to enter. *Id.* ¶¶ 55, 58. He was later convicted of a criminal violation of the FACE Act. *Id.* ¶ 62.

## DISCUSSION

Congress enacted the FACE Act in 1994 "in an effort to combat the continuing violence against, and forcible interference with, abortion clinics, those providing or receiving abortion-related services, and their families." *United States v. Hart*, 212 F.3d 1067, 1071 (8th Cir. 2000) (citing H.R.Rep. No. 103-306, at 5-7 (1993), *reprinted in* 1994 U.S.C.C.A.N. 699, 701-03). Specifically, between 1977 and 1993, violent acts nationwide "included at least 36 bombings, 81 arsons, 131 death threats, 84 assaults, two kidnappings, 327 clinic invasions, and one murder." *Am. Life League, Inc. v. Reno*, 47 F.3d 642, 646 (4th Cir. 1995) (citing S.Rep. 103-117, at 31 (1993); H.R.Rep. No. 103-306, at 6-7 (1993), *reprinted in* 1994 U.S.C.C.A.N. 699, 703-04). In the wake of such violence against and interference with "abortion clinics, their staffs, and their clientele by radical elements of the anti-abortion movement," Congress passed the FACE Act, "with strong bipartisan support." *United States v. Soderna*, 82 F.3d 1370, 1372 (7th Cir. 1996). While the statute was passed in response to the protracted violence related to facilities providing abortions and abortion-related services, "the drafters cast the net of liability wider" to include "any reproductive medical or other health services, not just abortion, and also people seeking to exercise their religious rights in a church or other house of worship." *Id.* at 1372-73.

This Statement of Interest focuses on issues raised by the parties' submissions in connection with the State's request for a preliminary injunction; specifically, it discusses that the

term "physical obstruction" is broad and includes all forms of physical obstructions of access to facilities providing reproductive health services.

## I. The FACE Act's Broad Prohibition Against Physical Obstructions of Clinics Encompasses Temporary and Partial Obstructions, as well as Activities Inside and Outside Clinics.

Whoever: 1) by force, threat of force, or physical obstruction; 2) intentionally injures, intimidates, or interferes with, or attempts to injure, intimidate, or interfere with; 3) any person because that person is, or in order to intimidate such person from, providing or obtaining reproductive health services, violates the FACE Act and may be subject to civil and criminal penalties. 18 U.S.C. § 248(a)(1). The statute defines "physical obstruction" as (a) "rendering impassable ingress to or egress from a facility that provides reproductive health services," or (b) "rendering passage to or from such a facility . . . unreasonably difficult or hazardous." 18 U.S.C. § 248(e)(4). To "interfere with" means "to restrict a person's freedom of movement." 18 U.S.C. § 248(e)(2). The term "facility" "includes a hospital, clinic, physician's office, or other facility that provides reproductive health services"—and "includes," but is not limited to—"the building or structure in which the facility is located." 18 U.S.C. § 248(e)(1).

New York courts have held that while the statute requires actual physical obstruction, *see New York ex rel. Spitzer v. Operation Rescue Nat'l*, 273 F.3d 184, 195 (2d Cir. 2001), physical obstruction is not limited to bodily obstruction, *New York ex rel. Spitzer v. Cain*, 418 F. Supp. 2d 457, 480 (S.D.N.Y. 2006). Rather, it "is broadly phrased to prohibit any act rendering passage to the facility unreasonably difficult." *Id.* To establish that passage was "unreasonably difficult," courts have held that "[i]t is not necessary to show that a clinic was shut down, that people could not get into a clinic at all for a period of time, or that anyone was actually denied medical services[.]" *People of State of New York ex rel. Spitzer v. Kraeger*, 160 F. Supp. 2d 360, 373

(N.D.N.Y. 2001); *see also United States v. Gregg*, 32 F. Supp. 2d 151, 156 (D.N.J. 1998) ("Entry into or invasion of the clinic . . . or the non-occurrence of scheduled procedures or abortions . . . need not be demonstrated to establish a violation of the Act."). Instead, protestors make passage "unreasonably difficult" when their actions cause individuals to "encounter[] interference, harassment, and traffic hazards when attempting to enter or leave a clinic." *Kraeger*, 160 F. Supp. 2d at 373 (citing *United States v. Scott*, 958 F. Supp. 761, 775-76 (D. Conn. 1997); *United States v. Lindgren*, 883 F. Supp. 1321, 1330-31 (D.N.D. 1995); *United States v. White*, 893 F. Supp. 1423, 1431-32 (C.D. Cal. 1995)).

### A. The FACE Act's Definition of "Physical Obstruction" Includes Acts That Temporarily Block Access To or From a Facility.

Physical "obstruction need not be permanent or entirely successful. That patients may eventually have reached [a facility] in spite of defendants' actions is therefore beside the point." *Cain*, 418 F. Supp. 2d at 480 n.18. Acts of physical obstruction that are sufficient to create liability under the FACE Act thus include "slowing access to driveways or parking lots" or "blocking patients inside automobiles by standing close to car doors." *Id.* at 480 (citation omitted). Similarly, the Second Circuit has affirmed that tactics including "using [one's] body to slow moving cars" and dropping an item on the ground and retrieving it "in slow motion" in order to "slow access to the . . . parking lot" would likely constitute physical obstruction. *Operation Rescue Nat'l*, 273 F.3d at 195. Defendants' assertion that actions do not constitute "physical obstruction" when they do not "block anybody from entering the facility," ECF No. 37 at 10, is accordingly, a red herring.[2]

[2] Citations to page numbers in the parties' briefings refer to the ECF page numbers stamped on the header of each docket entry.

**B. Individuals Who Partially or Incompletely Block Access To or From a Facility Cause a Physical Obstruction in Violation of the FACE Act.**

The FACE Act's definition of physical obstruction plainly covers both actions that completely block access and actions that partially block access to a facility. Physical obstruction is defined to cover both: actions that "render[] *impassable* ingress to or egress from a facility," as well as actions that may simply "render[] passage to or from such a facility . . . unreasonably difficult or hazardous." 18 U.S.C. § 248(e)(4) (emphasis added). Interpreting the Act to reach only circumstances that render a facility completely inaccessible would make the "unreasonably difficult or hazardous" language superfluous.

New York courts' interpretations of the statute have underscored that partially blocking access to a facility violates the FACE Act. For example, "participating in a demonstration so close to a clinic entrance that patients are compelled to use an alternate entrance" violates the FACE Act. *Cain*, 418 F. Supp. 2d at 480 (citation omitted). Individuals also engage in physical obstruction when they crowd patients and step in their way, making it difficult for patients to "maneuver around them." *Kraeger*, 160 F. Supp. 2d at 376. Similarly, courts in other jurisdictions have held that the FACE Act does not require that offenders block the only, or even the primary, access point to a clinic. "[A]s long as access is made 'unreasonably difficult or hazardous,' it is not necessary to establish that there was absolutely no way to enter an abortion facility in order to prove a violation of the Act." *Gregg*, 32 F. Supp. 2d at 156 (citation omitted) (finding that individuals who "la[id] prone on the stairway and hallway" such that others had to step or climb over their bodies—and thus were ultimately able to enter the facility—engaged in physical obstruction); *see also United States v. Mahoney*, 247 F.3d 279, 281-84 (D.C. Cir. 2001) (affirming that blocking two out of three entrances to a clinic rendered passage to or from the clinic "unreasonably difficult"); *FemHealth USA, Inc. v. Williams*, No. 3:22 Civ. 00565, 2022 WL

4241269, at *4 (M.D. Tenn. Sept. 14, 2022) (finding plaintiff likely to succeed in showing FACE Act violation, even though some individuals entered the facility when protestors and guards stood in front of doorways), *appeal docketed*, No. 22-5915 (6th Cir. Oct. 13, 2022). If the FACE Act were "[c]onfined to forbidding the *complete* blockage of clinic entrances," it would be "easily evaded, for example by blockaders' leaving just enough space . . . for a person to squeeze through . . . or by lying down across the entrance so that [one] has to step . . . over the blockader." *Soderna*, 82 F.3d at 1377 (emphasis in original) (also noting that actions that block "only one entrance of several" would still make passage unreasonably difficult).

### C. The FACE Act Forbids Activities Both Inside and Outside Facilities that Render Passage To or From a Facility Unreasonably Difficult.

While "actual entry into the clinic by the protestors is [not] required for conduct to fall within the definition of 'physical obstruction,'" *United States v. Roach*, 947 F. Supp. 872, 876 (E.D. Pa. 1996), the FACE Act applies with equal force to individuals who—having obtained access to the inside of a facility— cause disruptions that "render[] passage to or from such a facility [] unreasonably difficult or hazardous," 18 U.S.C. § 248(e)(4).

#### 1. The FACE Act Applies to Activities Inside a Facility.

The language of the FACE Act makes no distinction between physical obstruction that occurs directly outside or inside a facility. "The starting point in statutory interpretation is the statute's plain meaning." *United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000).

To ensure that individuals are able to access reproductive health services, the FACE Act prohibits "rendering passage to or from . . . a facility. . . unreasonably difficult" in order to "intentionally . . . intimidate[] or interfere[] with . . . any person . . . obtaining or providing reproductive health services." 18 U.S.C. § 248(a)(1). Nowhere does the statute limit its

application to physically obstructive conduct at the physical threshold of a building or structure in which a facility is located.

Defendants make the remarkable assertion that the FACE Act applies only to activities at the "interior" or "exterior" "entrance/exit" to a facility, ECF No. 36 at 11, such that as long as an individual can walk through a doorway, it does not matter what happens on the other side. Accepting Defendants' arguments would mean that individuals who gained entrance into a clinic—and, for example, proceeded to barricade the doors to an exam room inside the facility—would not violate the FACE Act, because such physical obstruction did not occur at an entrance or exit to the clinic. The statute makes clear that this is not what Congress intended. While the FACE Act's definition of "facility" includes the physical "building or structure in which the facility is located," 18 U.S.C. § 248(e)(1), "facility" is also defined to include a "physician's office," "clinic," "or any other facility that provides reproductive health services." *Id.* The definition of facility necessarily encompasses the parts of such facilities that provide health care services. The FACE Act protects a person's access to a facility, and all of its component parts, to obtain or provide reproductive health care free from intentional injury, intimidation, or interference—not just access to a facility's physical door.

That makes sense, because the statute is designed to ensure access to care: the statute's purpose states that it was enacted to create penalties and remedies "for certain . . . obstructive and destructive conduct that is intended to . . . interfere with persons seeking to obtain or provide reproductive health services." PL 103–259, § 2, 108 Stat 694. Physical obstruction that intentionally interferes with accessing care—specifically, by restricting a person's freedom of movement to access care—can occur at a door, but it can also occur on stairs, in a waiting room, in an exam room, or anywhere else inside a clinic. Individuals who occupy a waiting room with

their physical bodies, for example, force patients and health care professionals to maneuver around them, avoid the waiting room altogether, or depart, and accordingly "restrict a person's freedom of movement." 18 U.S.C. § 248(e)(2). Indeed, those activities not only make accessing care "unreasonably hazardous or difficult," they can also render access to care in the facility impossible, forcing clinic staff to cease providing medical care while trespassers occupy a waiting room or any other part of a facility.

Even if the Court were to find that the statute's text is ambiguous and subject to multiple reasonable meanings, the Court may look to canons of statutory construction to help resolve any ambiguity; if the text is still not clear, legislative history provides a guide. *See Dauray*, 215 F.3d at 264; *see also Williams v. MTA Bus Co.*, 44 F.4th 115, 127 (2d Cir. 2022).

Logic dictates that the FACE Act be read to prohibit physical obstruction that occurs both outside and inside of a facility. It is well-settled that "a statute should be interpreted in a way that avoids absurd results." *Dauray*, 215 F.3d at 264. It defies common sense that activities that would constitute a FACE Act violation in a doorway would not constitute a FACE Act violation one step inside. Such a reading would also be at odds with the fundamental purpose of the FACE Act, which the legislative history reveals is directed at protecting the right to access and provide reproductive health services. *See* PL 103–259, § 2, 108 Stat 694; *see also The Freedom of Access to Clinic Entrances Act of 1993: Hearing on S.636 Before the S. Comm. On Lab. & Hum. Res.*, 103rd Cong. 1 (May 12, 1993) (statement of Sen. Durenberger) ("I do know that this madness must stop. In this regard, it is important to remember that the legislation we are considering today is not necessarily directed at violent behavior. The issue today is primarily one of access.").

The Joint Conference Report further corroborates Congress's intent that the Act guard against invasions of clinics and physically obstructive conduct inside clinics.[3] While Congress considered the passage of the FACE Act in the context of serious violence, including bombings, arsons, death threats, and a murder, *Am. Life League, Inc*, 47 F.3d at 646, it also contemplated that other less violent, and nonviolent acts, could constitute physical obstruction. Congress specifically found that an interstate campaign of obstructive and destructive conduct had been aimed at providers of reproductive health services, and that such conduct included "blockades and *invasions* of medical facilities." H.R.Rep. No. 103-488, at 7 (Conf. Rep.) (1994), *reprinted in* 1994 U.S.C.C.A.N. 724, 724 (emphasis added). And when recommending the passage of the Act, the Judiciary Committee similarly noted that protestors had engaged in a "technique, known as 'invasions,' [which] involves a number of pro-life demonstrators storming and entering clinics that are in the process of offering services to patients," H.R.Rep. No. 103-306, at 7 (1993), *reprinted in* 1994 U.S.C.C.A.N. 699, 704, and that "[b]y making clinics inaccessible to patients and staff alike, blockades and invasions deprive people of needed health care services," *id.* at 9; *see also* S.Rep. No. 103-117, at 14 (1993). Accordingly, the Judiciary Committee concluded that "acts of physical obstruction covered [by the Act] would include blockades and invasions rendering passage to or from a clinic . . . unreasonably difficult." H.R.Rep. No. 103-306, at 12 (1993), *reprinted in* 1994 U.S.C.C.A.N. 699, 709; *see also* S.Rep. No. 103-117, at 23 (1993).

[3] "[T]he most authoritative and reliable materials of legislative history, includ[e]: the conference committee report, committee reports, sponsor/floor manager statement and floor and hearing colloquy." *Disabled in Action of Metro. New York v. Hammons*, 202 F.3d 110, 124 (2d Cir. 2000). "Because a conference report represents the final statement of terms agreed to by both houses, next to the statute itself it is the most persuasive evidence of congressional intent." *Id.* (citation omitted); *see also Jingrong v. Chinese Anti-Cult World All. Inc.*, 16 F.4th 47, 59 (2d Cir. 2021) (analyzing provisions of the FACE Act using the Joint Conference Report, H.R. Rep. No. 103-488 (Conf. Rep.) (1994)).

As discussed above, such physical obstruction can occur at the threshold of a facility, but it can also occur anywhere inside a facility that renders access to care "unreasonably difficult or hazardous." 18 U.S.C. § 248(e)(4). While Defendants note that most cases involve activities outside a clinic or at the doorway to a clinic, *see* ECF No. 36 at 11, that does not mean that *only* activities outside of a clinic violate the FACE Act, or that the FACE Act's protections evaporate at the door. The United States is unaware of any court that has issued such a decision and Defendants do not cite one.

In keeping with the purpose of the FACE Act, courts have construed the FACE Act to apply to a wide range of activities, including activities inside a facility as well as activities that "contribute" to interference with access to care. In *United States v. Gregg*, for example, the court held that individuals who had "plac[ed] themselves *inside* the clinic building on the second floor landing in front of the clinic's patient waiting room entrance and office area," violated the FACE Act. 32 F. Supp. 2d at 156 (emphasis added).[4]

Courts have also deemed activities that take place in locations other than an entryway, and that contribute to physical obstruction, to be violations of the FACE Act. In *United States v. Mahoney*, the court held that because the statute "does not limit physical obstruction to bodily obstruction, but rather is broadly phrased," an individual who "contribut[ed] to the demonstration within a few feet of the clinic entrances"—a demonstration that was intended to block access to the clinic and forced patients to use a crowded and chaotic alternative entrance, making passage to the clinic unreasonably difficult—also engaged in physical obstruction. 247 F.3d at 284. Thus,

---

[4] While Defendants are correct that those individuals "completely block[ed] the staircase" to the waiting room, ECF No. 36 at 11, such a complete blockade is not necessary to establish physical obstruction under the FACE Act. *See supra* Section I.B; *see also Kraeger*, 160 F. Supp. 2d at 373 ("[I]t is not [even] necessary to show that a clinic was shut down . . . or that anyone was actually denied medical services.").

individuals who "contribute" to the disruption can be held liable under the FACE Act, including if their actions take place inside of a facility.

Accordingly, activities inside the facility that render passage to or from the facility and its components unreasonably difficult can also violate the statute.

### 2. Defendants Misread the Text and Purpose of the FACE Act.

Defendants' reading of the FACE Act—that it does not prohibit non-violent activities inside clinics, ECF No. 37 at 18-19—misreads the text and purpose of the statue. The FACE Act unambiguously covers nonviolent actions; in fact, the statute explicitly contemplates differing penalties for violent and nonviolent physical obstructions. *See* 18 U.S.C. §§ 248(b), (c)(2)(B).

Activities inside a facility that Defendants claim do not constitute physical obstruction—committing "trespass onto the property of reproductive health facilities," "refusing to leave the premises," or "interfer[ing] with the provision of health services" by "screaming," ECF No. 36 at 10; *see also* ECF No. 37 at 19-20—can cause disruptions in the provision of services that render passage to or from the facility unreasonably difficult or hazardous, in violation of the FACE Act. Indeed, these alleged activities by Defendants made accessing care not only difficult, but also impossible: their "trespass onto" and "refusing to leave" the facilities allegedly resulted in facility staff calling the police, evacuating the patients from the building or into the hallways, and being unable to provide care for hours. Compl. ¶¶ 25, 32, 41, 44, 92.

Having unauthorized individuals present in a facility that provides health services can reasonably cause providers to be concerned, stop the provision of medical services, and call the

police.[5] For example, as alleged, clinic staff and patients were terrified that Moscinski's duffel bag contained weapons; staff at All Women's Care called the police and evacuated the building so that the police could search the premises.[6] Compl. ¶¶ 23, 25, 92. Once the police arrived, Defendants refused staff and police requests to leave, and had to be carried out by police officers. *Id.* ¶¶ 25-28. Defendants repeatedly attempt to frame these actions as "non-obstructive trespass." ECF No. 37 at 7, 11, 12, 17, 20. This is a mischaracterization and disregards the fact that "physical obstruction" is "broadly phrased." *Cain*, 418 F. Supp. 2d at 480; *see also Mahoney*, 247 F.3d at 284 (same). Physical obstruction can include when protestors make passage "unreasonably difficult" by forcing individuals to "encounter[] interference" and "harassment[,]" *Kraeger*, 160 F. Supp. 2d at 373, and includes "actual physical obstructions created by [] defendants' bodies," *Cain*, 418 F. Supp. 2d at 480. Defendants' attempt to frame Plaintiff's argument as equating "an emotional reaction by clinic patrons or clinic operators," ECF No. 37 at 18, to a violation of the

[5] In a case Defendants themselves rely on, ECF No. 36 at 2; ECF No. 37 at 8, 23-27, the Supreme Court has recognized the unique sensitivities and vulnerabilities that patients face in clinical settings:

> Hospitals, after all, are not factories or mines or assembly plants. They are hospitals, where human ailments are treated, where patients and relatives alike often are under emotional strain and worry, where pleasing and comforting patients are principal facets of the day's activity, and where the patient . . . need[s] a restful, uncluttered, relaxing, and helpful atmosphere.

*Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 772 (1994).

[6] Fears of violence are not unfounded. In 2015, for example, an individual walked into a Planned Parenthood center in Colorado Springs and killed three people, including a police officer, and wounded five officers and four civilians. Trevor Hughes, *Planned Parenthood Shooter 'Happy' with His Attack*, USA TODAY (Apr. 11, 2016, 9:30 p.m.), https://www.usatoday.com/story/news/2016/04/11/planned-parenthood-shooter-happy-his-attack/32579921; *Planned Parenthood: Three Die in Shooting at Colorado Clinic*, BBC (Nov. 28, 2015), https://bbc.in/2XClRW9. Last year, at least two clinics were burned to the ground. Amanda Holpuch, *Arson Destroyed Knoxville Planned Parenthood Clinic, Officials Say*, N.Y. Times (Jan. 7, 2022), https://www.nytimes.com/2022/01/07/us/knoxville-planned-parenthood-arson.html; *Masked, hooded woman seen on video setting fire at what would be Wyoming's only abortion clinic*, CBS NEWS (Jun. 9, 2022, 8:09 a.m.), https://www.cbsnews.com/news/wyoming-only-abortion-clinic-arson-video-reward.

FACE Act fails, because Defendants ignore the consequences of their trespass activity. Trespassers who occupy a facility—with their physical bodies—and cause fear or refuse to leave, such that the police are called or that they have to be carried out by police officers, can cause disruptions that make it unreasonably difficult for staff and patients to pass to and from the clinic to obtain or provide care; such actions constitute physical obstruction under the FACE Act. This is particularly the case when the trespassers reasonably foresee (or intend) the consequences of their occupation. *See, e.g.,* Compl. ¶ 43 (Moscinski allegedly stating that he would not leave the White Plains clinic because, "[o]nce we are removed, this place will go back to normal operations").[7]

Finally, while Defendants argue that any ambiguity should be resolved in their favor under the rule of lenity, ECF No. 36 at 14; ECF No. 37 at 18, the rule of lenity does not apply in instances where the statute's meaning is unambiguous. As an initial matter, courts have "always reserved [the rule of] lenity for those situations in which a reasonable doubt persists about a statute's intended scope even after resort to 'the language and structure, legislative history, and motivating policies' of the statute." *Dauray*, 215 F.3d at 264 (citing *Moskal v. United States*, 498 U.S. 103 (1990)); *see also United States v. DiCristina*, 726 F.3d 92, 97 (2d Cir. 2013) (noting that "the rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended"). Because the plain text, canons of construction, and legislative history all

[7] Although Defendants claim that there is no evidence of "interference," ECF No. 36 at 15-16; ECF No. 37 at 19, occupying a waiting room or entryway or doorway constitutes "interference" under the FACE Act because it "restrict[s] a person's freedom of movement," 18 U.S.C. § 248(e)(2). When individuals physically occupy portions of a facility, they force patients and health care providers to maneuver around them, use a different entrance, turn around and leave, or be unable to enter in the first place.

support that non-violent activities inside a clinic may violate the FACE Act, *see supra* Section I.C.1, the Court does not need to "simply guess" what Congress intended, and the rule of lenity does not apply to the FACE Act.[8]

The United States respectfully submits that, if Defendants' reading of the FACE Act prevails, Defendants and other individuals and organizations will be emboldened to invade facilities across the country and force patients and providers to face harassment and intimidation within the walls of hospitals, clinics, physician's offices, and other facilities that provide reproductive health care, contrary to the Congressional intent plainly embodied in the statutory text.

## CONCLUSION

The FACE Act's definition of physical obstruction has been interpreted broadly and encompasses any activity that would make passage to a clinic unreasonably difficult, as Defendants' actions allegedly did here.

Dated: September 19, 2023
New York, New York

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By: */s/ Amanda Lee*
AMANDA LEE
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2781
E-mail: Amanda.Lee2@usdoj.gov

[8] Defendants' reliance on *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393 (2003), ECF No. 36 at 13-14; ECF No. 37 at 18, is misplaced; in that case, the Supreme Court examined the meaning of the Hobbs Act, not the FACE Act. *See id.* at 404 (deciding the definition of "extortion" under the Hobbs Act, and concluding that "the obtaining of property from another" must include "not only the deprivation but also the acquisition of property").