**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

People of the State of New York, by LETITIA JAMES, Attorney General of the State of New York,

Plaintiff,

-against-

RED ROSE RESCUE, CHRISTOPHER MOSCINSKI, MATTHEW CONNOLLY, WILLIAM GOODMAN, LAURA GIES, JOHN HINSHAW, AND JOHN AND JANE DOES, the last two named being fictitious names, the real names of such persons being currently unknown but who are active in defendant organization or act in concert with the above-named individuals to engage in, or who will engage in, the conduct complained of herein,

Defendants.

UNITED STATES OF AMERICA,

Plaintiff-Intervenor,

-against-

RED ROSE RESCUE, MATTHEW CONNOLLY, WILLIAM GOODMAN, CHRISTOPHER MOSCINSKI, and JOHN AND JANE DOES, the last two named being fictitious names, the real names of such persons being currently unknown but who are active in defendant organization or act in concert with the above-named individuals to engage in, or who will engage in, the conduct complained of herein,

Defendants.

23 Civ. 4832 (KMK)

**COMPLAINT-IN-INTERVENTION OF THE UNITED STATES**

The United States of America, by the undersigned counsel, asserts a civil cause of action seeking damages, penalties, and injunctive relief under the Freedom of Access to Clinic Entrances Act ("FACE Act"), 18 U.S.C. § 248.

1. In bringing this action, the United States alleges that: (1) defendants Red Rose Rescue, Matthew Connolly, William Goodman, and Christopher Moscinski (collectively, "Defendants") have committed, and are likely to continue to commit, violations of the FACE Act; and (2) various persons who provide or obtain reproductive health services are being, have been, and will continue to be injured, intimidated, and/or interfered with by the Defendants' conduct.

## I. JURISDICTION AND VENUE

2. This court has jurisdiction over this action pursuant to the FACE Act, 18 U.S.C. § 248, and 28 U.S.C. § 1345.

3. The United States is authorized to bring this action pursuant to the FACE Act, 18 U.S.C. § 248(c)(2).

4. Venue is proper in this judicial district, under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to this complaint occurred in this judicial district.

## II. PARTIES

5. Plaintiff is the United States of America.

6. Defendant Red Rose Rescue ("RRR") is an anti-abortion group that enters reproductive health centers across the country in an effort to stop their operations. RRR has been active since at least 2017. RRR was the outgrowth of the anti-abortion "sit-ins" and blockades of reproductive health services facilities by anti-abortion groups in the 1980s and 1990s, including

an organization named Operation Rescue, of which Moscinski was a member.[1] As stated in the group's online mission statement:

> During a Red Rose Rescue a team of pro-lifers enter the actual places where the innocent unborn are about to be "*dragged to death*." In the words of Saint Mother Teresa, they enter the "*dark holes of the poor*." Red Rose Rescuers peacefully talk to women scheduled for abortion, with the goal of persuading them to choose life. They offer to them red roses as a sign of life, peace and love. Should the unborn still "totter to execution" Red Rose Rescuers stay in the place of execution in solidarity with their abandoned brothers and sisters performing a non-violent act of defense through their continued presence inside the killing centers remaining with them for as long as they can.

7. Despite numerous arrests and convictions, RRR has publicly stated that "rescues" will continue as long as abortion is legal.[2]

8. On information and belief, defendant Christopher Moscinski resides in the Bronx and claims to have been arrested at least 31 times for interfering with patients' rights to access abortion, including at least nine times as a member of Red Rose Rescue and in this judicial district.

9. On information and belief, defendant Matthew Connolly resides in Minnesota and has been arrested at least ten times for interfering with patients' rights to access abortion as a member of Red Rose Rescue, including in this judicial district.

10. On information and belief, defendant William Goodman resides in Wisconsin and has been arrested at least a dozen times for interfering with patients' rights to access abortion as a member of Red Rose Rescue, including in this judicial district.

---

[1] https://bnnmedia.org/vod/life-matters/life-matters-monica-m-miller-phd-and-red-rose-rescue; *United States v. Lynch et al*., 97-1092 (2d Cir. 1997), Brief for the United States of America at 11; https://www.nytimes.com/1995/10/31/nyregion/us-sues-abortion-protesters-in-test-of-clinic-access-law.html

[2] https://www.lifesitenews.com/news/2-catholic-priests-2-activists-arrested-for-pro-life-witness-inside-abortio/

## III. LEGAL AND FACTUAL BACKGROUND

### A. THE FACE ACT

11. Congress enacted the FACE Act in 1994 "in an effort to combat the continuing violence against, and forcible interference with, abortion clinics, those providing or receiving abortion-related services, and their families." *United States v. Hart*, 212 F.3d 1067, 1071 (8th Cir. 2000) (citing H.R.Rep. No. 103-306, at 5-7 (1993), *reprinted in* 1994 U.S.C.C.A.N. 699, 701-03).

12. The Act provides civil remedies and criminal penalties against anyone who "by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services[.]" 18 U.S.C. § 248(a)(1).[3]

13. The statute defines "physical obstruction" as (1) "rendering impassable ingress to or egress from a facility that provides reproductive health services," or (2) "rendering passage to or from such a facility [] unreasonably difficult or hazardous." 18 U.S.C. § 248(e)(4).

### B. RED ROSE RESCUE

14. A Red Rose Rescue is a coordinated effort by members of the Red Rose Rescue organization to shut down reproductive health service facilities, "counsel" women against obtaining or seeking to obtain reproductive health services, and prevent those who provide such services from doing so.

---

[3] "The term 'reproductive health services' means reproductive health services provided in a hospital, clinic, physician's office, or other facility, and includes medical, surgical, counselling or referral services relating to the human reproductive system, including services relating to pregnancy or the termination of a pregnancy." 18 U.S.C. § 248(e)(5).

15. During a Red Rose Rescue, "a team of pro-lifers" enters the reproductive health services facility to "persuade" women not to receive an abortion and offer them a "red rose."[4] "Rescuers" occupy the reproductive health services facility, disrupt their operations, and remain there "for as long as they can."[5] "The rescuers will not leave . . . but must be taken away" by the police.[6]

16. Red Rose Rescue purposefully schedules reproductive health clinic invasions to occur when the Red Rose Rescue organizers believe abortions are scheduled, to stop them from happening.[7]

17. While the "Rescuers" occupy the reproductive health services facility, a larger group of Red Rose Rescue members gather outside the facility or around its entranceway to pray and "counsel" the women who attempt to enter the facility, and some are designated to contact the media.[8]

18. As Moscinski has stated, "there is absolutely no reason why, just because the abortion industry claims to establish a property line, that we have to desist in our acts . . . in reaching out to the mothers." Moscinski asserts that the "property line is . . . invalid." Red Rose

---

[4] https://www.redroserescue.com/about

[5] *Id.*

[6] *Id.*; *see also* Christopher Moscinski, 2020 Red Rose Rescue Conference: Direct Action on Behalf of the PreBorn and Their Mothers (Dec. 12, 2020), https://www.youtube.com/watch?v=NP96Ri6QE5o&list=PL1TmA9lq8zIw0Zr38oB0Lu-C5gagMuTW7&index=3&t=78s (discussing what occurs at a Red Rose Rescue event)

[7] Christopher Moscinski, 2020 Red Rose Rescue Conference: Direct Action on Behalf of the PreBorn and Their Mothers (Dec. 12, 2020), https://www.youtube.com/watch?v=NP96Ri6QE5o&list=PL1TmA9lq8zIw0Zr38oB0Lu-C5gagMuTW7&index=3&t=78s

[8] *Id.*

Rescue "does not accept the legitimacy of this artificial barrier" of the reproductive health services facility's property rights.[9]

19. The "Rescuers" are aware that occupying the waiting room and refusing to leave will likely result in their arrest and prosecution.[10]

20. Once the "Rescuers" enter the reproductive health services facility under false pretenses and the facility's staff realizes the "Rescuers'" purpose in being there, facility staff asks them to leave. The "Rescuers," however, refuse to leave and claim they are "patient advocates." Staff then typically calls the police.[11]

21. This is the result the "Rescuers" intend. They hope for a law enforcement response to their occupation so that the reproductive health services facility's operations will be disrupted while the police are present.

22. As a result, the "Rescuers" continue to refuse to leave the patient waiting room, with police in and surrounding the facility, as long as possible in order to shut down the reproductive health services facility.

23. Further, as Moscinski has asserted, Red Rose Rescue members purposefully exploit police protocols that often require police officers to give warnings to trespassers before arrest. Specifically, Red Rose Rescuers know and abuse this policy by refusing to leave after

---

[9] *Id.*

[10] Monica Miller, 2020 Red Rose Rescue Conference: Principles of Non-Violence (Dec. 12, 2020), https://www.youtube.com/watch?v=8aDXaP45FQQ&list=PL1TmA9lq8zIw0Zr38oB0Lu-C5gagMuTW7&index=2&t=15s; *see also* https://www.redroserescue.com/about

[11] Christopher Moscinski, 2020 Red Rose Rescue Conference: Direct Action on Behalf of the PreBorn and Their Mothers (Dec. 12, 2020), https://www.youtube.com/watch?v=NP96Ri6QE5o&list=PL1TmA9lq8zIw0Zr38oB0Lu-C5gagMuTW7&index=3&t=78s

receiving a warning so that their invasion will result in a longer occupation of the reproductive health services facility and will further prevent and disrupt the facility's operations.[12]

24. Red Rose Rescuers take advantage of the police warnings and work to engage the police in lengthy conversation as a tactic to extend the occupation of the reproductive health services facility: "The police engage us in conversation . . . and we have this conversation. Sometimes it's a short conversation. I've had times with the police . . . we're in the waiting room sometimes up to two to three hours going back and forth and all the time that we're there, the patients are not coming through. It's a real interruption to the whole killing business there."[13]

25. At a Red Rose Rescue conference in 2020, Moscinski stated, "The longer we can disrupt the normal functioning of the killing place, the better. And if you have five or six police inside, eight or ten patrol vehicles outside setting up the police perimeter, the normal business of killing the children at that place has already stopped or has certainly paused."[14]

26. Eventually, the police arrest the "Rescuers" for trespass. But after being arrested, the "Rescuers" refuse to walk out of the reproductive health services facility. Rather, they further disrupt the facility's operations by delaying their removal. As Defendant Moscinski explained, "when the police handcuff us and place us under arrest . . . we go limp, kneel, or sit on

---

[12] *Id.*

[13] Interview by Gene Zannetti with Christopher Moscinski, https://www.youtube.com/watch?v=SsXyeR6eXro

[14] Christopher Moscinski, 2020 Red Rose Rescue Conference: Direct Action on Behalf of the PreBorn and Their Mothers (Dec. 12, 2020), https://www.youtube.com/watch?v=NP96Ri6QE5o&list=PL1TmA9lq8zIw0Zr38oB0Lu-C5gagMuTW7&index=3&t=78s

the floor, and the police are forced to carry us out because we will not willingly cooperate in our removal from the abortion place."[15]

27. Red Rose Rescue considers occupations "successful" when those occupations force the closure of a reproductive health services facility or cancelation of appointments because the "Rescuers" have trespassed into the facility and made access to the facility unreasonably difficult.

28. For example, on or around October 17, 2020, in response to a Red Rose Rescue occupation in which Moscinski participated, Red Rose Rescue member Laura Gies described how the targeted reproductive health service facility had to cancel appointments and close for the day, proclaiming, "Victory!" and "God wins when an abortion clinic cannot operate."[16]

29. Over the past five years, there have been dozens of Red Rose Rescue occupations.

### C. DEFENDANTS' UNLAWFUL CONDUCT IN WHITE PLAINS

30. On November 27, 2021, Christopher Moscinski, Matthew Connolly, and William Goodman, along with several other members of Red Rose Rescue, organized, formulated, and participated in a Red Rose Rescue event at All Women's Health and Medical Services ("All Women's Health") in White Plains, New York.

31. All Women's Health provides reproductive health services as that term is defined in the FACE Act, 18 U.S.C. § 248(e)(5). For the safety of the patients and staff, All Women's Health keeps its entrance door locked. To enter the building, a patient must make an appointment. At the time of the appointment, the patient is required to buzz the intercom next to

---

[15] *Id.*

[16] Laura Gies, Facebook Live (Oct. 17, 2020), https://www.facebook.com/laura.a.gies/videos/10224847122864933

a door on the ground floor of the building and announce her name. Once office staff verifies the appointment, the staff remotely unlocks the door, the patient walks into a vestibule area, walks up a set of stairs to a landing area ("the Landing Area"), turns a corner, and walks up another set of stairs to the waiting room.

32. Audrey Whipple, a Red Rose Rescue member, made an appointment for November 27, 2021, at All Women's Health, misrepresenting herself as a patient. Shortly after 8:30 a.m. on the morning of her false appointment, she buzzed the health center's intercom and falsely identified herself as a patient; after a staff member confirmed that she had an appointment, she was buzzed into All Women's Health. The staff member told Whipple that she could not bring anyone with her.

33. After being admitted under these false pretenses, Whipple held the door open for other Red Rose Rescue members, allowing Moscinski and Goodman to sneak in behind her. Moscinski and Goodman waited a couple of minutes while Whipple walked up the stairs to the waiting room to check in for her false appointment. At this time, Moscinski was wearing jeans and a sweatshirt.

34. When Whipple checked in for her false appointment, the All Women's Health staff member asked for her identification. Whipple acted confused and stated that she left it in the car and would call someone to bring it to her. But rather than calling anyone, Whipple began to speak with patients in the waiting room.

35. The staff member noticed that two men had entered behind Whipple and were in the entrance vestibule, and asked Whipple to direct them to leave, but Whipple did not. The staff member went to the Landing Area and told Moscinski and Goodman that they were not allowed to be in the center.

36. Moscinski and Goodman nevertheless began climbing the first set of stairs to the patient waiting area. Standing at the Landing Area, the staff member repeatedly told the men to leave and put her hands up to prevent Moscinski and Goodman from going up the stairs. However, both charged past her up the second flight of stairs and into the patient waiting area.

37. Staff members called 9-1-1, requesting that the operator immediately send the police to the center because Moscinski and Goodman refused to leave. Around this same time, Moscinski changed from his jeans and sweatshirt into his friar's robe.

38. At approximately 8:40 a.m., after Moscinski and Goodman had invaded the waiting room, Whipple went back downstairs and opened the locked entrance door. Connolly and three other members of Red Rose Rescue charged towards the vestibule area between the entrance door and the stairway to the patient waiting room. Three staff members of All Women's Health raced down the stairs to prevent these individuals from moving further into All Women's Health. One of the staff members stood outside the entrance door to try to prevent other Red Rose Rescue members from entering.

39. Despite office staff repeatedly asking Connolly and the other Red Rose Rescue members occupying the vestibule area to leave, Connolly knelt, keeping the door open.

40. At approximately 8:48 a.m., police officers from the White Plains Police Department arrived and entered through the back entrance of All Women's Health. When they arrived, Moscinski and Goodman were sitting in the patient waiting area. The police officers directed them to leave. Moscinski and Goodman refused, stating that they would remain unless all staff at All Women's Health left and stopped performing abortions.

41. After speaking with members of Red Rose Recuse, several patients cried; all patients were escorted into hallways and around the waiting room to avoid further interactions with Red Rose Rescue members.

42. After being repeatedly directed to leave by the police officers, Moscinski said, "As long as we're here, the staff . . . is occupied with this situation and new people are not coming through." He further added, "Once we're removed, they get to go back to normal operations."

43. While several officers were interacting with Moscinski and Goodman, another officer went to the entrance vestibule to ensure that the other Red Rose Rescue members in the vestibule would not climb the stairs to the waiting area. For approximately two hours, Connolly kept the entrance door that is always closed and locked propped open with his body, refusing to leave. He stood, knelt, and, ultimately, laid down in middle of the entrance way to keep the door open. Connolly prayed continuously while occupying half of the doorway, forcing patients to squeeze past him to enter the stairway; Connolly shoved a red rose onto the arm and into the hands of a man accompanying a patient.

44. While Connolly was holding the door open, Red Rose Rescue members, numbering from at least two to four at a time, prayed, sang, and yelled in the small vestibule area of All Women's Health.

45. During this time, a handful of patients attempted to enter All Women's Health. To do so, these patients were required to step past the Red Rose Rescue members who gathered in the clinic entrance. These patients were also required to step past Connolly, who was kneeling, praying, chanting, and singing in the entrance way. The other Red Rose Rescue members who surrounded the entrance in the vestibule area were also either praying, singing,

chanting, or yelling in close proximity to the patients. The Red Rose Rescue members told the patients things such as, “don’t go through with this today,” “don’t have an abortion, have a baby”; “defend the baby, daddy; she didn’t want to hear you say whatever you decide”; “women get offered the abortion and immediately regret it; don’t do that to yourself”; “even after the abortion you’re still going to be a mother. . . but you won’t have your baby because they will have killed it.” Some patients were escorted from the entrance and up the stairs by an All Women’s Health staff member while being yelled at by Red Rose Rescue members congregating in the vestibule area.

46. Other patients tried to access the clinic from a back entrance reserved for employees. Red Rose Rescue members surrounded that entrance, handing out pamphlets and praying; one patient brushed past them and yelled, “leave me alone!”

47. The officers spent approximately an hour and half trying to convince the Red Rose Rescue members to leave All Women’s Health. Officers told them many times that they were not allowed in the building, and that if they refused to leave voluntarily, they would be arrested. The Red Rose Rescue members who were occupying the vestibule area eventually left the premises, except for Connolly.

48. Moscinski and Goodman, who had remained in the waiting area, also refused to leave, claiming that, as long as they were present at the clinic, no abortions could occur. They attempted to negotiate their departure with All Women’s Health staff and the police by insisting that they would leave if and only if All Women’s Health ceased performing abortions.

49. Eventually, after Moscinski, Goodman, and Connolly had invaded All Women’s Health for approximately two hours, the police arrested them. They refused to walk out of All Women’s Health and the police were forced to physically carry them from the premises.

50. First, at approximately 10:30 a.m., three police officers arrested Connolly. He refused to walk, requiring three police officers to carry him to the police car.

51. After they carried Connolly out of the entrance way and into a police car, the police arrested Moscinski and Goodman in the waiting area. Moscinski stated that he would not participate in his arrest, requiring three police officers to carry him down the staircase and into the police car. The police repeatedly asked Moscinski to walk down the stairs because it was dangerous for the officers to carry him but he refused.

52. Goodman was willing to walk down the stairs, but he was unwilling to walk when he arrived in the vestibule area, requiring the police officers to carry him to the police car.

53. By making the police officers carry them out of the building, Moscinski, Goodman, and Connolly further prevented access to and from the entrance and up the stairs to the main area of the clinic.

54. It was not until 11:00 a.m., more than two hours after Red Rose Rescue members entered All Women's Heath, that the police escorted Moscinski, Goodman, and Connolly out of the building. During those approximately two hours, all surgical and gynecological appointments were canceled, and several patients who had appointments on November 27, 2021, were not seen at all due to the invasion. In addition, patients who had been directed to stay on an all-liquid diet since the evening before a procedure were forced to continue on that diet for longer than anticipated. Further, several All Women's Health staff remained in their cars, further delaying treatment.

55. On the Red Rose Rescue website, the organization trumpeted these actions as "Mission Accomplished," posting a picture of police officers physically carrying Moscinski from the clinic:[17]




56. The Westchester County District Attorney's Office charged Moscinski, Goodman, and Connolly with criminal trespass in the third degree. Following a three-day trial, on March 17, 2022, Moscinski, Goodman, and Connolly were convicted of criminal trespass in the third degree. On August 2, 2022, Moscinski, Goodman, and Connolly were sentenced to three months in jail for criminal trespass.

57. Goodman has called the criminal conviction a "badge of honor." He added, "We will not look back, but keep looking forward to new opportunities to work for authentic justice. We shall not be silent, we shall not stop our efforts until every human person is safeguarded from

[17] https://www.redroserescue.com/blog

lethal violence."[18] Moscinski has expressed his intention to continue invading clinics, and not "stop at some artificial property line."[19]

**D. RED ROSE RESCUE UNLAWFUL CONDUCT ACROSS THE COUNTRY**

58. Defendants and members of Red Rose Rescue have invaded numerous reproductive health facilities and they continue to do so despite being repeatedly arrested and convicted of trespassing.

59. On September 15, 2017, RRR members, including Goodman and Connolly, entered a clinic in Sterling Heights, Michigan, sat on the floor praying and refused to leave. They were found guilty of trespassing and sentenced to two years of probation.[20]

60. Also on September 15, 2017, RRR members, including Moscinski, entered a clinic in Alexandria, Virginia, and were arrested an hour and a half later.[21]

61. On December 2, 2017, RRR members entered the waiting room and hallway of a clinic in Washington, D.C. and were arrested several hours later. Each was convicted of trespassing.[22]

62. Also on December 2, 2017, RRR members, organized by Miller, entered a clinic in Alexandria, Virginia, refused to leave, prayed out loud, and begged women to cancel their

---

[18] https://www.lifesitenews.com/news/782605/

[19] https://news.yahoo.com/face-death-113026932.html

[20] http://www.prolifesociety.net/archives/2017/pages/rescue.aspx; http://www.prolifesociety.net/archives/2018/pages/defendants.aspx

[21] http://www.prolifesociety.net/archives/2017/pages/rescue.aspx; https://www.lifesitenews.com/news/breaking-pro-lifers-arrested-in-red-rose-rescue-at-three-u.s.-abortion-cent/; https://rewirenewsgroup.com/2018/03/01/trespassing-trial-march-caught-attention-activists-sides-abortion-movement/

[22] https://www.lifesitenews.com/news/priest-it-was-an-honor-to-be-jailed-for-trying-to-save-babies-inside-aborti/

appointments. When the police arrived on scene to arrest, they went limp, forcing officers to carry them out on wheelchairs and stretchers. All were charged with misdemeanor trespassing.[23]

63. Again on December 2, 2017, RRR members, including Connolly and Goodman, entered a clinic in West Bloomfield Township, Michigan, sang hymns, and attempted to "counsel" women in the waiting room. The protestors, including Connolly and Goodman, were arrested, charged, and found guilty of trespassing and obstruction of justice. They were sentenced to probation, which included a prohibition from being 500 feet or closer to any abortion clinic in the country. Connolly and Goodman were later arrested for violating this condition.[24]

64. On March 26, 2018, RRR members, including Moscinski, entered a clinic in Washington, D.C., occupied the space for two hours, and reportedly prevented 12 women from receiving abortions. Moscinski, among others, were arrested for trespass.[25]

65. On July 24, 2018, RRR members, including Moscinski and Goodman, entered a clinic in Washington, D.C., occupied the space for two hours, and were physically carried out by police due to their refusal to leave. All were charged with criminal trespass.[26]

---

[23] http://www.prolifesociety.net/archives/2017/pages/RRR.aspx;
https://rewirenewsgroup.com/2018/03/01/trespassing-trial-march-caught-attention-activists-sides-abortion-movement/

[24] http://www.prolifesociety.net/archives/2017/pages/RRR.aspx;
http://www.prolifesociety.net/archives/2018/pages/courtFebMar.aspx;
http://www.prolifesociety.net/archives/2018/pages/probation.aspx;
http://www.prolifesociety.net/archives/2018/pages/outofjail.aspx;https://www.lifesitenews.com/news/jury-finds-red-rose-rescuers-guilty-of-trespass-and-obstruction-in-half-hou/

[25] http://www.prolifesociety.net/archives/2018/pages/RRRdc.aspx

[26] http://www.prolifesociety.net/archives/2018/pages/RRRDC2.aspx;
https://www.lifesitenews.com/news/judge-throws-out-case-against-pro-life-rescuers-after-pro-abortion-witnesse/?utm_source=LifeSiteNews.com&utm_campaign=6902066677-Daily%2520Headlines%2520-%2520U.S._COPY_357&utm_medium=email&utm_term=0_12387f0e3e-6902066677-401429005

66. On September 29, 2018, RRR members, including Moscinski, Connolly, and Goodman, entered a clinic in Montclair, New Jersey, and were arrested within ten minutes. All but one were charged with defiant trespass.[27]

67. On December 20, 2018, RRR members entered a clinic in Washington, D.C. and were arrested and charged with trespassing.[28]

68. On December 22, 2018, RRR members, including Moscinski, Goodman, and Connolly, entered a clinic in Trenton, New Jersey and attempted to "counsel" women in the waiting room. All were arrested and charged with trespassing.[29]

69. On March 19, 2019, RRR members entered a clinic in Washington, D.C. and attempted to "counsel" women in the waiting room. Members were arrested and charged with unlawful entry and failure to leave.[30]

70. Also on March 19, 2019, RRR members, including Moscinski, entered another clinic in Washington, D.C., and were arrested by police and charged with trespass.[31]

71. On June 7, 2019, RRR members, including Goodman and Connolly, entered a clinic in Flint, Michigan, and attempted to "counsel" women in the waiting room. Members,

---

[27] http://www.prolifesociety.net/archives/2018/pages/20180929.aspx; https://www.lifesitenews.com/news/five-pro-lifers-arrested-inside-new-jersey-abortion-center/

[28] https://www.lifesitenews.com/news/priest-pro-life-activists-enter-abortion-center-risk-arrest-to-save-babies/; https://www.lifesitenews.com/news/federal-court-drops-charges-against-priest-pro-lifers-who-entered-dc-aborti/

[29] https://www.lifesitenews.com/news/priest-3-pro-lifers-arrested-after-saving-baby-inside-planned-parenthood-be/

[30] http://www.prolifesociety.net/archives/2019/pages/20190319.aspx; https://www.lifesitenews.com/news/2-priests-7-pro-lifers-risk-arrest-by-entering-abortion-facilities-this-morning/; https://www.lifesitenews.com/news/dc-judge-dismisses-charges-against-priest-activists-who-tried-to-save-babies-inside-abortion-center/

[31] https://www.lifesitenews.com/news/2-priests-7-pro-lifers-risk-arrest-by-entering-abortion-facilities-this-morning/; https://www.redroserescue.com/post/case-dismissed-abortion-biz-witness-fails-to-appear

including Goodman and Connolly, were arrested, charged, and found guilty of trespassing, disturbing the peace, and resisting arrest.[32]

72. On July 13, 2019, RRR members, including Moscinski and Goodman, entered a clinic in Morristown, New Jersey, and attempted to 'counsel' women in the waiting room. All were arrested.[33]

73. On January 18, 2020, RRR members, including Moscinski, Goodman, and Connolly, entered a clinic in Plainfield, New Jersey, and remained there for an hour before being arrested and charged with a municipal trespassing ordinance.[34]

74. On April 30, 2020, RRR members, including Goodman, entered a clinic in Baton Rouge, Louisiana, by sneaking through a side door. They were dragged out by clinic security and arrested and charged with failure to disperse.[35]

75. On May 13, 2020, RRR members, including Connolly, stood near the side entrance of a clinic in Grand Rapids, Michigan, and refused to leave. Some members were cited for and charged with trespassing.[36]

---

[32] https://www.lifenews.com/2019/06/10/four-pro-life-advocates-arrested-after-going-inside-abortion-clinic-to-save-babies/; https://www.mlive.com/news/flint/2019/06/police-remove-abortion-protesters-for-refusing-to-leave-clinic-in-flint-township.html; https://www.lifesitenews.com/news/pro-lifers-to-face-felony-charges-for-resisting-arrest-while-trying-to-save-babies-inside-abortuary/; https://www.mlive.com/news/flint/2019/08/judge-lets-felony-charges-stick-against-flint-township-abortion-clinic-protesters.html; https://www.michiganradio.org/criminal-justice-legal-system/2022-06-29/anti-abortion-activists-found-guilty-of-resisting-arrest-other-charges-in-genesee-county-clinic-protest

[33] https://www.redroserescue.com/post/red-rose-rescue-took-place-july-13-2019-at-morristown-n-j

[34] https://www.redroserescue.com/post/saturday-jan-18-2020-red-rose-rescue-at-new-jersey-abortion-clinic; https://www.lifesitenews.com/news/catholic-priest-pro-life-activists-arrested-for-refusing-to-leave-abortuary-offering-moms-roses/

[35] https://www.redroserescue.com/post/pro-lifers-arrested-for-giving-moms-roses-at-abortion-center-during-covid-19

[36] https://www.redroserescue.com/post/six-pro-lifers-arrested-trying-to-save-babies-from-abortions-at-local-abortion-clinic; https://www.mlive.com/news/grand-rapids/2020/05/anti-abortion-protest-at-grand-rapids-clinic-leads-to-2-arrests.html; https://www.redroserescue.com/post/updated-police-arrest-peaceful-

76. On May 14, 2020, RRR members, including Moscinski and Goodman, entered a clinic in Washington, D.C. and were arrested by police and charged with unlawful entry.[37]

77. Also on May 14, 2020, RRR members entered another clinic in Washington, D.C., and attempted to "counsel" women in the waiting room before being arrested.[38]

78. On January 30, 2021, RRR members, including Moscinski and Connolly, entered a clinic in Silver Spring, Maryland, and were arrested after two hours. All were charged with trespassing, disorderly conduct, and conspiracy to commit disorderly conduct.[39]

79. On April 24, 2021, RRR members, including Moscinski, invaded a clinic in Manhasset, New York, and were arrested after two hours. RRR members, including Moscinski, were subsequently convicted of trespassing and second degree obstructing governmental administration.[40]

80. On June 4, 2021, RRR members, including Moscinski, entered a clinic in Cuyahoga Falls, Ohio, and refused to leave until police arrested them. All were charged with trespassing.[41]

---

pro-lifers-at-red-rose-rescue-at-michigan-abortion-clinic

[37] https://www.redroserescue.com/post/two-priests-arrested-for-trying-to-save-babies-from-abortion-at-late-term-abortion-clinics

[38] *Id.*

[39] https://www.redroserescue.com/

[40] Red Rose Rescue, (2) Red Rose Rescue | Facebook (February 3, 2022); https://www.ncregister.com/blog/red-rose-rescue-feb-10-verdict

[41] https://www.redroserescue.com/post/eighteen-year-old-among-those-arrested-defending-the-unborn

81. On June 5, 2021, RRR members, including Goodman, assembled in the parking lot of and entered a clinic in Bedford Heights, Ohio. Members including Miller were arrested with aggravated trespass.[42]

82. On August 27, 2021, RRR members, including Connolly and Goodman, entered a clinic in Philadelphia, Pennsylvania. After being asked to leave, Connolly barricaded himself in a bathroom, forcing staff to evacuate the whole building due to security risk. The SWAT team had to physically remove the door to remove Connolly, and all appointments were canceled at the clinic for the day.[43]

83. Also on August 27, 2021, RRR members, including Moscinski, entered a clinic in West Chester, Pennsylvania, and were quickly arrested. All were charged with felony trespass and conspiracy to commit trespass.[44]

84. On January 22, 2022, RRR members, including Goodman, stood outside of the entrance of a clinic in Washington, D.C., and tied a ribbon across piping leading to its entrance.[45]

85. On April 23, 2022, RRR members, including Moscinski and Connolly, entered a clinic in Southfield, Michigan, and were physically removed by security among arrival. Police cited each member of the group for trespassing and resisting arrest.[46]

---

[42] *Id.*

[43] https://www.redroserescue.com/post/two-red-rose-rescues-took-place-friday-aug-27th-one-rrr-shut-down-a-planned-parenthood-abortion

[44] *Id.*

[45] http://www.prolifesociety.net/pages/start/startup/home.aspx

[46] https://www.lifesitenews.com/news/pro-life-activists-assaulted-by-security-guards-in-michigan-abortion-facility/?utm_source=featured&utm_campaign=usa; https://www.lifenews.com/2022/04/25/catholic-priest-pro-life-advocates-arrested-after-going-inside-clinic-to-save-babies-from-abortion/

86. Despite numerous arrests and convictions across the country, RRR has publicly stated that "rescues will continue" as long as abortion is legal in any state.

### E. DEFENDANT MOSCINSKI'S PAST CONDUCT IN THIS DISTRICT

87. In 1995, SDNY filed a civil FACE Act complaint against Moscinski and George Lynch (another member of RRR, then called "Operation Rescue") for blocking access to the Women's Medical Pavilion in Dobbs Ferry, New York, on one occasion in May 1995. The complaint also alleged that they had blocked access to the Pavilion numerous times since 1990. *United States v. Lynch*, No. 95 Civ. 9223 (JES) (S.D.N.Y. 1995).

88. The district court issued a permanent injunction on February 23, 1996, which provided:

> IT IS HEREBY ORDERED that defendants George Lynch and Christopher Moscinski, their agents, and all individuals acting in concert with defendants or their agents, are permanently enjoined from violating, or aiding and abetting the violation of, the Freedom of Access to Clinic Entrances Act of 1994, 18 U.S.C. § 248, in any way, including but not being limited to:
>
> > 1. impeding or obstructing automotive or any other form of ingress into, or egress from, the Women's Medical Pavilion in Dobbs Ferry, New York; and
> > 2. attempting to take—or inducing, encouraging, directing, aiding, or abetting in any manner others to take—any of the actions set forth in subparagraph 1 of this order.

*United States v. Lynch*, 952 F. Supp. 167, 168 (S.D.N.Y. 1997).

89. Moscinski and Lynch appealed the entry of the injunction. The Second Circuit affirmed. *See United States v. Lynch*, 104 F.3d 357 (2d Cir. 1996).

90. On April 3, 1996, Lynch violated the injunction by sitting with others against the Pavilion's doors and blocking the entrance for thirty minutes. The district court found Lynch to be in civil contempt of the injunction.

91. On August 24, 1996, Lynch and Moscinski returned to the Pavilion and again blocked access to the clinic. On September 6, 1996, the United States charged them with criminal contempt. *See United States v. Lynch*, 952 F. Supp. 167, 168 (S.D.N.Y. 1997).

92. On November 15, 1996, the district court found defendants not guilty and dismissed the charges. *Id.* at 172.

93. The United States appealed. *See United States v. Lynch*, No. 97-1097 (2d Cir. 1997). The Second Circuit found that it lacked jurisdiction to consider the appeal under 18 U.S.C. § 3731 and the Double Jeopardy Clause. *See United States v. Lynch*, 162 F.3d 732 (2d Cir. 1998). The United States sought rehearing en banc, which was denied. *See United States v. Lynch*, 181 F.3d 330 (2d Cir. 1999).

94. At Moscinski's criminal sentencing in the City Court of White Plains in connection with the November 27, 2021 invasion of All Women's Health, the New York State court noted this history: "the issue is that you've engaged in the conduct unrepentingly for decades, to be quite frank." City Court of White Plains, CR-07557-21, 07558-21, CR-07559-21, Sentencing Transcript, dated August 2, 2022, at 27:10-12.

95. Because of this decades-old history of blatantly and knowingly violating the law, the state court concluded:

> THE COURT: Frankly, there's nothing I can say. I'm quite confident that there's nothing that I could say that simply is going to have any [sic] affect on you because you simply believe that you can do whatever you want and that the laws of the State of New York simply don't apply.

*Id.* at 29:12-17.

**Count I**
**Physical Obstruction, Force, or Threat of Force**
**18 U.S.C. § 248(a)(1), 248(c)(2)(B)**
**Civil Penalties and Damages**
**(All Defendants)**

96. The United States incorporates herein the averments of paragraphs 1 through 95.

97. Defendants' conduct as described in paragraphs 30 through 57 constitutes a physical obstruction that intentionally intimidated or interfered with persons, or constituted an attempt to intimidate and/or interfere with such persons, because they were or had been obtaining reproductive health services, or in order to intimidate such persons from obtaining reproductive health services at All Women's Health in violation of 18 U.S.C. § 248(a)(1).

98. Defendants' conduct as described in paragraphs 30 through 57 constitutes a physical obstruction that intentionally intimidated or interfered with persons, or constituted an attempt to intimidate and/or interfere with such persons, because they were or had been providing reproductive health services, or in order to intimidate such persons from providing reproductive health services at All Women's Health in violation of 18 U.S.C. § 248(a)(1).

99. As a result of the foregoing, Defendants are liable to the United States for (1) a civil penalty in the amount of not more than $18,444 for first violations and not more than $27,750 for subsequent violations, pursuant to 18 U.S.C. § 248(c)(2)(B)(i)-(ii) and 28 C.F.R. § 85.5, and (2) damages in the amount of $5,000 for each person aggrieved by Defendants' actions, pursuant to 18 U.S.C. § 248(c)(2)(B).

**Count II**
**Physical Obstruction, Force, or Threat of Force**
**18 U.S.C. § 248(a)(1), 248(c)(2)(B)**
**Injunctive Relief**
**(All Defendants)**

100. The United States incorporates herein the averments of paragraphs 1 through 99.

101. Defendants' conduct as described in paragraphs 30 through 57 constitutes a physical obstruction that intentionally intimidated or interfered with persons, or constituted an attempt to intimidate and/or interfere with such persons, because they were or had been obtaining reproductive health services, or in order to intimidate such persons from obtaining reproductive health services at All Women's Health in violation of 18 U.S.C. § 248(a)(1).

102. Defendants' conduct as described in paragraphs 30 through 57 constitutes a physical obstruction that intentionally intimidated or interfered with persons, or constituted an attempt to intimidate and/or interfere with such persons, because they were or had been providing reproductive health services, or in order to intimidate such persons from providing reproductive health services at All Women's Health in violation of 18 U.S.C. § 248(a)(1).

103. As a result of the foregoing, unless enjoined by this Court pursuant to 18 U.S.C. § 248(c)(2)(B), Defendants will continue to violate the FACE Act in the manner set forth above.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests judgment in its favor and against Defendants as follows:

A. On Count I, impose a civil penalty on Defendants of not more than $19,872 for first violations and not more than $29,899 for subsequent violations, pursuant to 18 U.S.C. § 248(c)(2)(B)(i)-(ii) and 28 C.F.R. § 85.5, and order damages in the amount of $5,000 for each person aggrieved by Defendants' actions, pursuant to 18 U.S.C. § 248(c)(2)(B);

B. On Count II, order appropriate injunctive relief pursuant to 18 U.S.C. § 248(c)(2)(B).

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By: ______________________

AMANDA LEE
ELLEN BLAIN
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, NY 10007
Tel: (212) 637-2781/-2743
Amanda.Lee2@usdoj.gov
Ellen.Blain@usdoj.gov