STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF SOCIAL JUSTICE
CIVIL RIGHTS BUREAU

June 13, 2025

Hon. Andrew E. Krause
United States Courthouse
300 Quarropas Street
White Plains, New York 10601

**Re: *People Of The State Of New York, By Letitia James v. Red Rose Rescue et al*, 7:23-cv-04832-KMK**

Dear Judge Krause,

The parties in the above-referenced action submit this joint letter to advise the Court of their discovery disputes, pursuant to this Court's text order on April 30, 2025, ECF 142.

As this Court is aware, the parties jointly proposed to bifurcate the liability and remedies stages of this case, and Judge Karas so ordered the proposal, ECF 82. The parties then briefed summary judgment on liability, and Judge Karas granted summary judgment to Plaintiff on all claims. ECF 139. Judge Karas held a status conference with the parties on April 23, 2025, and ordered the parties to serve discovery demands by May 9, 2025.

On May 9, 2025, Plaintiff issued document requests to three groups: (1) Defendants Red Rose Rescue, Connolly, Goodman, and Hinshaw; (2) Defendant Gies; and (3) Defendant Moscinski. Each group is separately represented. The same day, Defendants Red Rose Rescue, Connolly, Goodman, and Hinshaw issued document requests and two sets of interrogatories to Plaintiff.

On June 9, 2025, Plaintiff responded to the requests from Defendants Red Rose Rescue, Goodman, and Hinshaw and produced 723 documents, totaling over 5,000 pages. Plaintiff also provided responses to both sets of those Defendants' interrogatories. The same day, Defendants Red Rose Rescue, Connolly, Goodman, and Hinshaw issued written responses to Plaintiff's document requests but produced zero documents. Those Defendants served amended responses on June 11, 2025, attached hereto as Exhibit A, and still did not produce a single document. On June 9, 2025, Defendant Gies provided written responses to Plaintiff's document requests, attached hereto as Exhibit B, but produced zero documents. Defendant Moscinski did not provide a written response or produce any documents on the June 9, 2025, deadline but, when contacted by Plaintiff, he provided written responses on June 12, 2025, attached hereto as Exhibit C. He also produced no documents.

Below are the parties' positions on their discovery disputes.

## PLAINTIFF'S POSITION

1) **Defendants Red Rose Rescue, Connolly, Goodman, and Hinshaw's Failure to Produce any Documents**

In response to Plaintiff's second set of document requests, Defendants have declined to produce any information at all about their membership, leadership, or affiliation with agents, donors, recipients of funding, Exhibit A, Requests 1-5, or even their policies, procedures, and practices for planning invasions of clinics, Request 6, on the basis that this information is protected by the First Amendment. In making this broad and unsupported claim, Defendants cite a case involving constitutional scrutiny of a state statute that required disclosure of an organization's membership in order to do business in the state. *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021). That case did not address a party's discovery obligations in a pending lawsuit— and indeed, made clear that its holding that the organization need not make the statutorily required disclosures turned on the fact that the "information will become relevant in only a small number of cases." *Id.* at 614. Here, as discussed below, the information sought is directly relevant to the remedies at issue in this case. The other case cited by Defendants, *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449 (1958), also did not provide a sweeping exception to discovery about any membership, leadership, donors, or activities of an expressive organization, but rather held that the State had not demonstrated that the requested information about the group's rank and file members was relevant to its claims in that case. Again, as discussed below, the information requested here is relevant to the remedies sought in this case.

The relevance of the requested information cannot seriously be disputed. Defendants—**including organizational Defendant Red Rose Rescue**— have been found liable for multiple violations of the FACE Act. The Court entered a preliminary injunction, binding the individually named Defendants, the organizational Defendant, **and all other persons, known or unknown, acting on their behalf or in concert with them**. ECF 62. Plaintiff now seeks to obtain, among other things, a permanent injunction that prohibits Defendants**, and all those acting on their behalf or in concert with them,** from being present in a buffer zone around reproductive health clinics in New York, in order to prevent them from continuing to interfere with patients' access to lawful health care. The identities of the people to whom the order may apply—**who are acting on their behalf or in concert with them**—are at issue, as are the methods by which they have planned and carried out their unlawful interference with clinic access in New York.

Moreover, Defendants specifically refuse to search for any documents related to their discussions of facilities that provide reproductive health services in New York, Ex. A, Request 8, though such communications would clearly lead to discoverable information about how and why they have targeted clinics in the State, including the location of those clinics, which is directly relevant to the propriety and scope of an injunction. Again, there is simply no blanket exemption to Defendants' discovery obligations. Oddly enough, Defendants' requests for production to Plaintiff included a demand for "all communication" among clinics about their activities, Ex A, Request 9—essentially the reverse framing of Plaintiffs' request for all communication among Defendants about clinics. Plaintiff complied with this request. Yet Defendants refuse to do the same. Bizarrely, they now object to receiving documents that they themselves requested, calling Plaintiff's production, which includes communications, along with attachments in various media, that they requested, "a sham." It is unclear why they requested such material—which counsel now characterizes below as "a useless stack of paper"—if they did not want to receive it or believe it was relevant to their defenses. Their petty efforts to quibble with the format

of the production and complain, for the first time here, that they are unable to access certain videos, does nothing to distract from the deficiencies in their own production.

Finally, and most egregiously, Defendants' counsel refuses to conduct any searches for responsive documents at all. Instead of reviewing his individual and organizational clients' emails, texts, and/or social media, he emailed Plaintiff, "RRR is not a document-driven entity. I don't how many times I have to tell you this."

Given Defendants' counsel's outright refusal to search (or even acknowledge the existence of) any electronic sources of information, his dubious claims that his clients, **including his individual clients**, have no responsive documents at all cannot be verified. Plaintiff asks that Defendants not only be required to search for and produce responsive documents but to explain what steps they have taken to locate them.

### DEFENDANTS RED ROSE RESCUE, CONNOLLY, GOODMAN, AND HINSHAW'S POSITION.

**These Defendants have provided responsive documents, not mentioned by Plaintiff, and well-founded objections to Plaintiff's improper discovery demands, which violate the discovery limitations in the prior Stipulation between the parties bifurcating this case, as well as the First Amendment.**

Turning to the AG's document requests 1-5, these Defendants have *not* "declined to produce any information at all about their membership, leadership, or affiliation with agents, donors, recipients of funding" or "their policies, procedures, and practices for planning invasions of clinics…"

**First**, these Defendants have responded to Request No. 1 that "There are no such documents in these Defendants' possession, custody or control as Red Rose Rescue **has no formal legal or leadership structure or official position**s **as confirmed by Red Rose Rescue per Monica Miller**," who is the one of the originators of the whole concept of the Red Rose Rescue and is literally the only "source" on this matter. The same response notes that these Defendants have previously provided "Statements by Monica Miller, Ph.D. concerning her philosophy and a public-facing Code of Conduct for those who conduct a Red Rose-style rescue. and that "**There is nothing else to produce in this regard**." Besides Miller's statements and the Code of Conduct, there are **no documents** setting forth "policies, procedures, and practices for planning invasions of clinics." These defendants have no obligation to conduct searches for non-existent documents. Plaintiff refuses to recognize this.

**Second**, according to the Stipulation the parties entered into in 2024, liability was to be determined solely on the basis of the preliminary injunction record with **no additional discovery on liability**. Once liability was determined, any discovery requests would be "re-issue[d] **solely** as to remedies **for those defendants found liable**—including damages, penalties, and the scope of the injunction." (Dkt. 82, emphasis added.) The liability phase of this case is over.

Disregarding the language of the Stipulation, Plaintiff has issued sweeping demands for documents (Requests Nos. 3-6) whose obvious purpose is to attempt to expand liability in this case to 1) "people to whom the order may apply," and 2) "the methods by which they have planned and carried out their unlawful interference with clinic access in New York." **This is the second time Plaintiff has attempted to evade the Stipulation**; the first attempt having been rejected by Judge Karas in his Preliminary Injunction Opinion and Order. *See* Dkt. 139 at 3 & n. 2.

Ignoring both the discovery-restricting Stipulation and the First Amendment right to associational privacy, the AG argues that "The identities of the people **to whom the order may apply** are at issue, as are the methods by which they have planned and carried out their unlawful interference with clinic access in New York." The identities of these hypothetical people are **not** at issue. They have not been sued, are not subject to this Court's personal jurisdiction, cannot be enjoined, and cannot be held to pay any "damages." **Plaintiff made no effort to identify any such people during the protracted liability phase, when it had every opportunity to do so, and she cannot do so now. Plaintiff cannot now simply designate "people to whom they order may apply" as persons bound by the Injunction without further liability proceedings, which are precluded.**

Thus, at this point, the only parties "to whom the order may apply" are imaginary persons who, **in the future**, might allegedly aid and abet the named parties in violating any final injunction that might be issued as a remedy and would thus be covered, **at that time only**, by Rule 65. *See e.g. Havens v. James*, 76 F.4th 103, 111 (2d Cir. 2023)(noting that "[c]ourts have carefully distinguished between entering an injunction against a non-party, *which is forbidden*, and holding a non-party in contempt for aiding and abetting in the violation of an injunction that has been entered against a party, which is permitted.) At any rate, this very demand grossly violates the Stipulation by attempting to reopen the liability phase of this case.

Further, these Defendants have attempted to explain to Plaintiff's counsel why the identities of individuals with past contact with Red Rose Rescue, including making financial contributions at any time since 2017 (Requests Nos. 2 and 5), are simply not relevant, and why providing that information violates associational privacy, but they have declined to discuss the issue in any meaningful way. *See, e.g.* Brown v. Socialist Workers '74 Campaign Comm. (Ohio), 459 U.S. 87, 91–92, 103 S. Ct. 416, 420, 74 L. Ed. 2d 250 (1982); N. A. A. C. P. v. Claiborne Hardware Co., 458 U.S. 886, 932, 102 S. Ct. 3409, 3435–36, 73 L. Ed. 2d 1215 (1982) ("forced disclosure of one's political associations is, at least in the absence of a compelling state interest, inconsistent with the First Amendment's guaranty of associational privacy.")

**Third**, as to request No. 8, these defendants cannot possibly be expected to conduct a search over the past eight years for "All documents and communications concerning any facility that provides reproductive health services in the State of New York." Aside from being another attempt to reopen liability discovery, the request is vague, overbroad, and demands material that is First Amendment-protected from coerced disclosure. Defendants have responded accordingly, citing their First Amendment privilege regarding the privacy of their lawful communications, to the extent they exist, which would include such matters as lawful sidewalk advocacy not related to any Red Rose Rescue, negative comments about abortion clinics, and discussions of prolife issues related to such facilities. Further, as these Defendants stated in response to Request No. 9:

> **No such documents exist as to Rescues and none are planned in the State of New York as confirmed by Red Rose Rescue per Monica Miller.** To the extent this Request seeks "documents and communications concerning plans" regarding lawful First Amendment-protected activity, including sidewalk counseling and prayer vigils and private gatherings or conferences which have no connection to any planning for Red Rose Rescues as such, these Defendants object on the previously stated First Amendment grounds, and further object that this Request is overbroad, beyond the scope of this litigation, and not within the scope of any remedy in this bifurcated case."

**Fourth**, and finally, Plaintiff attempts to turn this dispute into a numbers game, comparing the number of documents she produced ("over 5000 pages") to the number produced by Defendants ("zero"). Not only is such

a comparison irrelevant to the actual issues underlying this dispute, but her presentation is blatantly misleading. The production is a sham consisting of some 4400 pages of trial transcripts, pleadings, and exhibits from unrelated prior cases involving these defendants and others *and the AG's own filings in this case itself*.

This useless stack of paper has nothing to do with the remedies phase of this case but does disclose the names of virtually every participant in Red Rose Rescues, rendering vain and superfluous the AG's improper request for the same names again. What remains of this disclosure of "5,000 pages" is 747 pages, including the following: 412 blank pages as placeholders for irrelevant videos that cannot be played; 170 one-page emails containing nothing of substance or else a total redaction of anything that might be of substance; 44 irrelevant news articles about defendants, mostly defendant Moscinski; 2 pages of gibberish code; and 15 blank pages as placeholders for documents withheld on the basis of some vague "privilege." Tellingly, buried in this sham production is a single invoice, produced twice, for a "security system" that is the only document relevant to Plaintiff's statutorily barred claim for "damages," representing only half of the total "damages" Plaintiff is now claiming according to her Rule 26 disclosures—a discrepancy that certainly calls for investigation.

## **PLAINTIFF'S POSITION**

**2) Defendant Gies's Failure to Produce any Documents**

Defendant Gies has also failed to produce a single responsive document.  Her attorney refused to explain what steps she took to conduct her search and instead wrote that she was "unaware of any requirement that [she] do so."  Accordingly, her claim that Plaintiff effectively refused to meet and confer with her about the deficiencies in her production is inexplicable, as she expressly refused to discuss any aspects of her search for documents.  Plaintiff has made clear that it challenges ALL of her dubious assertions that she has no responsive documents, since she refuses to discuss how she came to that conclusion.  Plaintiff asks that Defendant Gies not only be required to produce responsive documents but to explain what steps she has taken to locate them.

Moreover, Defendant Gies specifically refuses to search for any documents related to her discussions of facilities that provide reproductive health services in New York, Exhibit B, Request 8, claiming that it is not relevant to any claim or defense in this matter.  As noted above, such communications would clearly lead to discoverable information about how and why Defendant Gies has targeted clinics in the State, as well as the geographic location of those clinics, which is directly relevant to the propriety and scope of an injunction.

Plaintiff of course welcomes the opportunity to meet and confer in good faith about how Defendant Gies can search for responsive documents, but in order to do so, she must not refuse to discuss what sources of information are available, nor outright refuse to conduct any searches at all.  As of the submission of this status report, she continues to do both.

## **DEFENDANTS GIES'S POSITION:**

In the three days since Plaintiff alerted Mrs. Gies and the other Defendants of her objections to Defendants' responses to her document requests, counsel for Mrs. Gies has attempted to clarify and narrow the scope of those objections. Plaintiff, however, has effectively refused to meet and confer concerning the disputed responses, or even to clarify which of Mrs. Gies's responses they are actually disputing.

For example, Mrs. Gies has asked if Plaintiff is still seeking further responses to Nos. 7 and 9. Although those requests were not specifically mentioned in Plaintiff's objections to Mrs. Gies, nor in her position above, Plaintiff refused to confirm that Defendants' responses to those requests are not at issue here.

Regarding Request No. 1, Red Rose Rescue has not only stated that there are no documents regarding its organizational structure, but also stated that there is no organizational structure at all other than its founder, Monica Miller, a fact known to Plaintiff from Ms. Miller's declaration filed at the outset of this litigation. Doc. 40. But Plaintiff insists that Mrs. Gies conduct a search for blood from this turnip.

As to No. 8, Mrs. Gies pointed out that this request seeks all documents (not just documents containing "her discussions") in her possession that concern any hospital, pregnancy care center, birthing center, and abortion clinic in the state of New York. Leaving aside the question of how Ms. Gies (or the other defendants) would even conduct such a search, there is no doubt that this request is massively overbroad for Plaintiff's stated purpose of uncovering "communications . . . about how and why they have targeted clinics in the State," which in any event would be duplicative of Request No. 6. When Mrs. Gies suggested narrowing the scope of the Request to documents regarding that purported purpose, Plaintiff refused, but also did not make any counterproposal to narrow the scope.

As to Requests Nos. 2-5, Plaintiff has similarly refused to discuss how the requested documents would lead to information that could be used in the post-liability, remedy phase of this litigation.

Plaintiff should be directed to meet and confer in good faith to clarify and narrow the issues requiring court intervention.

## PLAINTIFF'S POSITION

### 3) Defendant Moscinski's Failure to Produce any Documents

Defendant Moscinski ultimately produced written responses to Plaintiff's document requests, which were almost entirely identical to the responses by Defendants Red Rose Rescue, Connolly, Goodman, and Hinshaw, and he also failed to produce a single document. In addition, he refused to answer Plaintiff's question about what sources of information he searched and how he did so. Plaintiff asks that Defendant Moscinski be required to search for and produce responsive documents and to explain what steps he has taken to locate them.

That all of these Defendants refuse to take even the most basic steps to search for responsive documents in their clients' possession or even discuss with Plaintiff what sources of information they possess and how they could best be searched is unprofessional, unethical, and unacceptable.

### DEFENDANT MOSCINSKI'S POSITION:

Defendant Moscinski joins in the position of the other Defendants as set forth above.

                                                        Respectfully submitted,

                                                        /s/ Sandra Pullman
                                                        Sandra Pullman
                                                        Senior Counsel

Civil Rights Bureau
New York Office of the Attorney General
(212) 416-8623
28 Liberty St., 20th Floor
New York, NY 10005