**Thomas More SOCIETY**
LIFE · FAMILY · FREEDOM

**BY ECF**

July 17, 2025

Hon. Andrew E. Krause
United States Courthouse
300 Quarropas Street
White Plains, New York 10601

Re:   **People v. Red Rose Rescue, et al., 23 Civ. 4832 (KMK)**

Dear Judge Krause:

      Defendants in good faith negotiated a Stipulation (Dkt. 82) under which (1) Defendant Red Rose Rescue (RRR) agreed not to contest that it is an entity capable of being sued, while all Defendants agreed not to challenge "the admissibility or authenticity of video and photographic evidence Plaintiff submitted" in support of its preliminary injunction motion; (2) *in exchange*, the AG withdrew its Request for Production of Documents (RPD) following Defendants' constitutional and Rule 26 objections thereto; (3) the case would be bifurcated into liability and remedies phases with "*limited discovery*" on remedies; (4) the AG would "seek a liability determination based *solely* on the factual record it presented in its [PI] Motion," (5) the parties would "cease all discovery on liability and brief summary judgment on liability on the existing [PI] record"; and (6) discovery related to remedies would be "*solely as to remedies for those defendants found liable—including damages, penalties, and the scope of the injunction*…" (emphasis added).

      The Court is now confronted with the AG's second breach of the Stipulation.[1] Ignoring its agreement to engage in "limited discovery" on remedies *solely* as "to those defendants found liable," the AG admits that she intends to continue litigating "to whom the injunction should apply"— a liability issue—and "how the injunction may be enforced," a meaningless locution obscuring the import of the first phrase: i.e., that the AG seeks to add a potentially long list of non-parties to any permanent injunction issued as a remedy.

      Tellingly, the AG made no effort during the liability phase to add as parties to these proceedings **25 non-party participants** in alleged Red Rose Rescues outside the State of New York whom the AG's own Complaint identifies by name.  See Dkt. 1 at 10-15.  **That is, the AG has long known the names of more than two dozen alleged "members" of Red Rose Rescue, yet made no effort to add any of them to these proceedings at the liability stage. There can be no clearer indication that the AG's current demand for documents identifying numerous non-parties "to whom the injunction should apply"—no matter how tenuous their connection to RRR—is in bad faith.**

---

[1] The first breach occurred when the AG smuggled into its summary judgment motion "dozens of citations to Defendants' Answers…an unverified discovery response from Red Rose Rescue, Goodman, Hinshaw, and Connolly…and a video of a non-party, recorded in Washington D.C., in October 2020, that was never in the record in this case…" (Dkt. 85, Defendants' Letter Motion to Strike). The AG hastily withdrew the unverified discovery response and irrelevant video, and Judge Karas held the AG to the terms of her bargain and did not consider the Answers. (Opinion on Summary Judg., Dkt. 139 at 3 & n.2).

At any rate, there is no mystery as "to whom the injunction should apply." It applies to the named parties and, hypothetically, to unknown others who *in the future* might act in concert with them to violate the injunction. Whoever those hypothetical future actors might be, they are not now under this Court's jurisdiction and have no liability to the Plaintiff unless, going forward, they aid and abet a violation of any injunction that might be issued: "To hold a nonparty in contempt, the nonparty must either abet the party named in the order, or must be legally identified with them." *SEC v. Bronson*, No. 12-CV-6421 (KMK), 2023 U.S. Dist. LEXIS 171657, at *14 (S.D.N.Y. Sep. 26, 2023) (simplified); *see also Haven v. James*, 76 F.4th 103, 107 (2d Cir. 2023) ("[A] person who is *not* a named party to an injunction and who is *not* legally identified with such a party is bound by the injunction *only* from acting for the benefit of, or to assist, a named party in violating the injunction." (Emphasis added).

While FRCP 65(d) lists categories of individuals who could, *upon a proper legal determination*, be deemed legally identified with or acting on behalf of a named party ("officers, agents, servants, employees, and attorneys"), "[t]his provision is designed to codify the common-law doctrine 'that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding.'" *Heyman v. Kline*, 444 F.2d 65, 66 (2d Cir. 1971) (quoting *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945).

The controlling factor for Rule 65(d) is not a label ("employee," "servant," "attorney") but the individual's relationship to the enjoined party as that relates to the individual engaging in conduct prohibited by the injunction. Rule 65 relationships *must* be determined in the present tense: "An injunction issued against a corporation or association binds the agents of that organization to the extent they *are* acting on behalf of the organization. Generally, *persons who cease to act in one of the designated capacities are no longer bound by the decree*." *New York v. Operation Rescue Nat'l,* 80 F.3d 64, 70 (2d Cir. 1996) (emphasis added).

Such adjudication now would require further liability proceedings, which the Stipulation forecloses. Yet, through Request Nos. 2, 3, 4 and 5, the AG is apparently attempting—without adjudication—to compile a list of individuals she speculates might be bound by a permanent injunction and then, *without notice or opportunity to be heard*, have them deemed bound by any final injunction and thus *liable* to enforcement and any resulting penalty for alleged non-compliance:

- Request No. 2 demands disclosure of all documents showing defendants' personal finances in connection with any Red Rose Rescue, as well as RRR's own finances.

- Request No 3 demands the identities of *potential* recruits, participants, donors, or partner groups.

- Request No. 4's description of possible "officers, agents, servants, [and] employees" includes anyone who (a) has ever spoken on RRR's behalf to the press or on social media; (b) has ever had any involvement with RRR's communications and social media; (c) has been involved with RRR at any time or place, including, "promoting" any RRR event; (d) received money from RRR, including "vendors and third-party contractors"; and (e) merely "expressed an interest" in RRR.

- Request No. 5 seeks the identities of any formal or informal "groups" that "provide[] financial support" in any amount since 2017 "to benefit Red Rose Rescue."

Even if the many ephemeral and insubstantial connections to RRR or individual defendants in these Requests were sufficient to establish liability in theory, *there is no legal mechanism by which additional parties could be added to any permanent injunction in this case*. Indeed, there is no legal mechanism to add individuals with allegedly more substantial connections to RRR, such as those whom the AG already identified in the Complaint but never pursued as liable parties (*supra*).

The district court's "jurisdiction is limited to those over whom it gets personal service, and who therefore can have their day in court." *Havens*, *supra*, 76 F.4th at 122, quoting *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832-33 (2d Cir. 1930). "The principle that 'everyone should have his own day in court' is 'fundamental' and 'part of our deep-rooted historic tradition.'" *Id*. at 111, quoting *Richards v. Jefferson County*, 517 U.S. 793, 797-98 (1996).

The district court *could not*, as part of the remedies phase of this litigation, add additional parties without giving those parties "their day in court," adjudicating their legal status as "agents" or otherwise, *individually* as a matter of *personal liabilit*y. But giving them their day in court would (1) require reopening the liability phase, contrary to the intent of the Stipulation, and, more important, (2) violate the express terms of the Stipulation under which, *in exchange for the noted concessions from Defendants*, the Attorney General "agreed to seek a liability determination based solely on the factual record it presented in its Motion [for Preliminary Injunction]." (Dkt. 82 at 1).[2]

The AG willingly bargained away any right to rely on additional evidence to adjudicate liability, and Judge Karas rejected the AG's prior attempt to evade the terms of the bargain. See note 1, *supra.* As the AG cannot rely on such information for her stated purpose, *a fortiori* she has no right to obtain it through discovery. Therefore, the AG's recycled RPD serves only the improper purpose of a fishing expedition to gather information about the government's perceived non-party political targets, and even *potential* targets, to which information the government has no right. That being the case, the First Amendment freedom of associational privacy is also implicated.

"The Constitution protects against the compelled disclosure of political associations and beliefs. Such disclosures can seriously infringe on privacy of association and belief guaranteed by the First Amendment… particularly where a group espouses dissident beliefs." *Brown v. Socialist Workers '74 Campaign Comm*., 459 U.S. 87, 91, 103 (1982) (invalidated compelled disclosure of minor political party members)(cleaned up); citing *NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 462 (1958).

Moreover, an association of activists is entitled to assert the right of its members to withhold their connection to the organization because "[t]o require that it be claimed by the members themselves would result in nullification of the right at the very moment of its assertion…. The

---

[2]If the AG should argue she is *not* intending to add these persons as parties bound by the injunction, then her pursuit of their identities would be revealed as an utterly gratuitous exercise in government intimidation—exactly what the First Amendment prohibits. *Brown*, 459 U.S. at 91; *see infra.*

3

Association… is but the medium through which its individual members seek to make more effective the expression of their own views." *NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. at 459–60. To the extent the AG seeks to expand liability to other individuals based on their alleged association with RRR, RRR can assert the associational privacy right of those individuals.

Thus, the AG not only fails to meet Rule 26's basic relevance and proportionality standards for discovery—while attempting to breach a discovery-limiting Stipulation—she also fails to meet the heightened constitutional standard for government-compelled disclosure of political association. Indeed, the AG has not even attempted to meet that standard. The "significant encroachments on First Amendment rights of the sort that compelled disclosure imposes cannot be justified by a mere showing of some legitimate governmental interest." *Buckley v. Valeo,* 424 U.S. 1, 64 (1972).

Rather, "the subordinating interests of the State must survive *exacting scrutiny*" and "there [must] be a relevant correlation or substantial relation  between the governmental interest and the information required to be disclosed" because "[t]his type of scrutiny is necessary even if any deterrent effect on the exercise of First Amendment rights arises, not through direct government action, but indirectly as an unintended but inevitable result of the government's conduct in requiring disclosure." *Id.* at 64-65 (emphasis added).

Stated otherwise, "it is an essential prerequisite to the validity of an investigation which intrudes into the area of constitutionally protected rights of speech, press, *association* and petition that the State convincingly show a substantial relation between the information sought and a subject of *overriding and compelling* state interest." *Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539, 546,(1963)(vacating subpoena seeking membership list of a local chapter of the NAACP) (emphasis added).  Nor can the AG be heard to argue that the exacting scrutiny standard is limited to the electoral context.  As the Supreme Court has recently made clear:

> "[E]xacting scrutiny is *not unique to electoral disclosure regimes*. To the contrary, *Buckley* derived the test from *NAACP* v. *Alabama* itself, as well as other nonelection cases…. As we explained in *NAACP* v. *Alabama*, it is immaterial to the level of scrutiny whether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters. *Regardless of the type of association, compelled disclosure requirements are reviewed under exacting scrutiny*."

*Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 608 (2021) (cleaned up)(emphasis added).

*Gibson*, for example, involved a governmental demand for the names of members of a local chapter of the NAACP; see also *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 932 (1982)*,* (*"*[W]e have held that forced disclosure of one's political associations is, at least in the absence of a *compelling state interest*, inconsistent with the First Amendment's guaranty of *associational privacy*.")(emphasis added).

Closer to home, New York's Appellate Division substantially quashed a subpoena issued during another of the Attorney General's fishing expeditions against pro-life activists, finding that the subpoena would "have a chilling effect on [Appellant's] associations with its employees and potential clients." *Evergreen Ass'n, Inc. v. Schneiderman*, 153 A.D.3d 87 (2017).  The Court

4

quashed two demands in their entirety because they "seek documents that infringe on Evergreen's First Amendment rights, including materials disseminated on websites, radio, and television and Internet broadcasts, and documents relating to *the sources of Evergreen's funding*," and strictly limited the scope of other demands, including the demand for the names of all staffers. *Id.* at 101-102. (emphasis added).³ Note well: the Court quashed the AG's demand for the names of all *actual employees* of Evergreen, whereas here the AG demands documents identifying anyone with even the most gossamer connection to RRR, an unincorporated association with no employees, officers, directors, or any formal organizational structure.

As the Court held in *Evergreen*: "[A]lthough the Attorney General was authorized to serve the subpoena and the materials sought are reasonably related to the investigation, the subpoena infringes on the First Amendment right of the petitioner and the petitioner's staff members to *freedom of association*, and is not sufficiently tailored to serve the compelling investigative purpose for which it was issued. Accordingly, we limit the scope of the subpoena to more narrowly tailor it to the Attorney General's legitimate investigatory needs." *Id.* at 97 (emphasis added).

In reaching that result, the Court applied the requisite strict scrutiny: "[I]n order to pass constitutional muster, the governmental action *must be narrowly tailored to serve the compelling state interest. …* [T]hat purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." *Id.* at 101(emphasis added); *quoting Shelton v. Tucker*, 364 U.S. 479, 488 (1960).

Here there is no legitimate government interest at all, let alone a compelling one, regarding the information for which the AG is fishing, and the AG has never attempted to identify a compelling interest justifying such an intrusion. The AG cannot use the information for her stated purpose, both as a matter of First Amendment law and because she is precluded from doing so by the Stipulation.

The Supreme Court has laid down the governing First Amendment rule: "[I]t has been established that guilt by association alone, without [establishing] that an individual's association poses the threat feared by the Government, is an impermissible basis upon which to deny First Amendment rights." *Claiborne Hardware Co.*, 458 U.S. at 919–20. Rather, "[t]he government has the burden of establishing a knowing affiliation with an organization possessing unlawful aims and goals, and a *specific intent to further those illegal aims*." *Id.* (cleaned up) (emphasis added). Once again, that cannot be proven here without further liability proceedings based on an expanded record—precisely what the Stipulation precludes.

In conclusion, the Stipulation was designed to simplify these proceedings, limiting remedies "solely" to "those defendants found liable." The AG now seeks to vastly complicate the case in violation of the parties' agreement, which was endorsed by the Court. The AG should be held to her agreement, which she has twice attempted to breach, and the document demands at issue quashed.

---

³ After the AG failed to obtain the private information it sought in order to harass and intimidate Evergreen, it abandoned its frivolous *in terrorem* "investigation," which came to nothing.

Respectfully submitted,

/s/ Christopher A. Ferrara
Christopher A. Ferrara – Senior Counsel
THOMAS MORE SOCIETY
148-29 Cross Island Parkway
Whitestone, Queens, NY 11357
*Counsel for Defendants Connolly,
Goodman, Hinshaw and Red Rose Rescue*

/s/ Catherine W. Short
Catherine W. Short
(Cal. SBN 117442), *pro hac vice*
LIFE LEGAL DEFENSE FOUNDATION
Post Office Box 1313
Ojai, California 93024-1313
*Co-counsel for Defendant Gies*

/s/ Dennis Ring
Dennis Joseph Ring
Law Office of Dennis J. Ring
148-29 Cross Island Parkway
Whitestone, NY 11357
*Counsel for Defendant Moscinski*

/s/ John P. Margand
John P. Margand
Law Offices of John P. Margand, P.C.
40 Midwood Avenue
Yonkers, NY 10701
*Co-counsel for Defendant Gies*