

September 22, 2025

Hon. Andrew E. Krause
United States Courthouse
300 Quarropas Street
White Plains, New York 10601

**Re:** *People Of The State Of New York, By Letitia James v. Red Rose Rescue et al.*, **7:23-cv-04832-KMK**

Dear Judge Krause,

The parties in the above-referenced action submit this joint status report pursuant to this Court's order on September 8, 2025.

**DEFENDANTS' POSITIONS**
**Defendant Laura Gies**

Counsel for both Mrs. Gies and RRR had a lengthy telephone consultation with a representative from Epiq, one of the major providers of ESI discovery services, who later provided a written quote estimating the cost for these services. The preparatory phase alone, consisting of gathering data from the six defendants' e-mail servers, plus their phones, would cost approximately $11,300. Further steps in the process including de-duplication of e-mails, hosting of the data, and document production, would cost thousands of dollars more for a total of more than $45,000. A copy of the written quote is attached to this letter. The representative further said that the rates charged by Epiq were standard for the industry.  Additionally, counsel for RRR and Gies made several unsuccessful efforts to contact other ESI discovery vendors.

Also, since the last conference, Mrs. Gies began yet another area of search, this time of all of her e-mails to, from, or containing the name of Monica Miller, amounting to about 1100 e-mails. She stopped this search on September 18 (having discovered no responsive e-mails) when her counsel received an e-mail out of the blue from the Attorney General proposing that individual names not be searched at all.

Both the expense of using an ESI platform to upload, de-duplicate, and search through thousands of e-mails, or, alternatively, the time required to search thousands of e-mails manually as Mrs. Gies has been doing, is unduly burdensome and disproportionate to the needs of the case at this post-liability, remedies-only phase. This is particularly so as the requests for production of documents propounded by the Attorney General seek documents that are demonstrably not relevant to the issues pertaining to remedies ***as defined by the Attorney General herself***.

At the hearing on July 29, the Attorney General identified the three ways she intends to argue the permanent injunction should be modified so as to match her initial request:

>1) the injunction should cover the entire state by adding the Northern and Western Districts of New York;
>2) the zone should be expanded from 15 feet to 30 feet; and
>3) the intent element should be eliminated so that the zones will completely exclude the bound parties.

First, it is clear that requests for production seeking documents about **organizational structure, fundraising, recruiting, expenditures, etc.** *on their face* have no relevance to the scope of the injunction as described by the Attorney General. There is simply no point to searching for such documents in these categories because to the extent any such documents exist, they can do nothing to inform Judge Karas's decision on these three points. The Attorney General has never tried to explain the relevance of their requests, insisting as she does in this update, that until Defendants expend further time and money, relevance is irrelevant.

Second, in ruling on the Attorney General's motion for preliminary injunction, Judge Karas addressed all three of these elements and explained why he was declining the Attorney General's requests:

1) As to making the injunction statewide, Judge Karas stated, "[T]he proposed injunction implicates Defendants' First Amendment rights, and this Court will not lightly extend that burden on Defendants' rights to jurisdictions where, *by the OAG's own admission*, there has never been an RRR." Doc. 66 at 53 (emphasis added). *Nothing in the defendants' e-mails or texts will change the fact that "there has never been an RRR" in upstate New York*.[1] Moreover, it has already been established that there are no plans for any future RRR in the state of New York.

2) As to the size of the zone, Judge Karas looked at the size of zones imposed in several other cases and noted, "A number of the cases to which the OAG points the Court suggest that fifteen feet is an appropriate size for a buffer zone around a reproductive health facility." *Id*. at 48. Those with larger zones "tend to involve unique factual circumstances that are not present here." *Id*. at 49 (citing cases involving a residential picket and the "relatively restricted geographic area" surrounding a specific clinic). Nothing in the defendants' e-mails or texts would change *the factual circumstances* which led Judge Karas to decide that 15 feet was an appropriate size here.

3) As to eliminating the intent requirement to prohibit the defendants from being in the buffer zone at all, in dismissing the contempt motion brought by the Attorney General, Judge Karas stated, "[P]eople have a First Amendment right to sidewalk counsel and advocate and that can never, ever, ever, ever be ignored . . ." 3/12/2025 Transcript at 73:4-5. His defense of the First

---

[1] Mrs. Gies has also informed the Attorney General that she is unaware of any plans for Red Rose Rescues, at any time, in upstate New York. For that reason, she has no e-mails relating even to contemplated RRR activity in upstate New York.

Amendment is consistent with his inclusion in the first instance of an intent requirement in the preliminary injunction, along with the admonition that "nothing in this Order shall be construed to limit Defendants and those acting in concert with them from exercising their legitimate rights under the First Amendment of the United States Constitution." Doc. 62 at 2-3. Clearly, it would take some very significant new facts for Judge Karas to decide that the Defendants should be denied their First Amendment right to sidewalk counsel after all. But those new facts will not be found in the Defendants' old e-mails. It will be found *in their conduct*, and particularly their conduct since the imposition of the preliminary injunction.

At the hearing on July 29, the Attorney General spoke about recent actions by Fr. Moscinski walking back and forth on the sidewalk in front of an abortion clinic in New York. Information about the conduct of Fr. Moscinski since the issuance of the preliminary injunction, obtained by documenting his actions visible to all on a public sidewalk, might arguably be relevant when Judge Karas is deciding upon the terms of the permanent injunction. Information from years ago, buried in e-mails, is not.

This is not a situation involving, for example, fraud or some hidden scheme, the details of which still need to be unearthed for liability to be determined. RRR conducts its activities in public, and publicizes them to the world on its Facebook page. Those *public* actions will inform the permanent injunction governing future public actions, not background discussions.

Defendant Gies therefore respectfully requests that, before this Court entertains any further efforts by the Attorney General to force Defendants to search for or produce documents responsive to her requests, it refer this matter to Judge Karas for a conference. Judge Karas is familiar with the applicable law and the factual record, and he understands why he granted a narrower injunction than requested by the Attorney General. Only Judge Karas knows what types of new information, if any, would inform his decision whether to expand the injunction as the Attorney General wishes.

Similarly, only Judge Karas knows whether, in crafting the permanent injunction, he has any use for the names of non-parties having some connection to RRR—from participants in past rescues, to funders to bus drivers to inquirers. It is contrary to the purpose of Rule 26 and violative of the Stipulation to force Defendants first to undertake a burdensome search for "documents sufficient to identify" all these various individuals,[2] and only after they have done the search, to rule on Defendants' challenge that this information is irrelevant and cannot be used in this final remedy phase of the litigation. We request that this question too be referred to Judge Karas before any further discovery is required.

In the alternative, Defendant Gies joins the Attorney General's request to the extent it asks this Court to issue an order.

---

[2] The Attorney General's demand for a privilege log raises the burdensomeness of the demands to a new level. The defendants have spent the last four years enmeshed in legal proceedings, including this lawsuit and criminal matters, related to RRR. Yet the Attorney General demands a privilege log for a list of search terms almost of which are tied to these proceedings, including several which are directly related to legal matters, e.g., "Attorney General," "AG," "contempt," "trespass" "convict" "injunction," "Letitia."

**Defendants Connolly, Goodman, Hinshaw and Red Rose Rescue**

These Defendants concur in the points raised by Defendant Gies. To these I would add, first of all, that the Attorney General, having failed to obtain a preliminary injunction that would have prohibited the mere presence of Defendants within 30 feet of any abortion clinic in the State of New York, even for First Amendment-protected activity, now wishes to rummage about in Defendants' ESI for something—something it cannot specify—that might change Judge Karas' mind when considering a permanent injunction. That is exactly the kind of fishing expedition that Rule 26, as well as the discovery-limiting Stipulation, prohibits. *See* Doc. 55, at 4.

Secondly, having obtained the concession that RRR is an enjoinable entity (in exchange for its broken promise to limit remedies discovery), the AG seeks to proceed as if RRR were not the defendant but merely a name for any number of non-parties it now wishes to characterize as "members" or "agents" without benefit of any legal proceedings against these people. Complicating this improper demand enormously, the AG now says Defendants need not run searches on the list of 35 non-parties but *must still look for communications with those same non-parties* in the results from the other search terms. What for? The AG refuses to say.

These searches are in the service of finding documents responsive to sweeping requests for documents related to virtually every aspect of RRR's activities, including its social media administrators and posters and its financial support. How are these requests related to remedies? The AG refuses to say.

There is no justification under Rule 26's relevance and proportionality standard, or under the Stipulation, for imposing on these Defendants the burden of conducting pointless searches of many thousands of irrelevant documents or requiring them to pay many thousands of dollars—far beyond their limited means—to an ESI vendor to facilitate the Attorney General's aimless fishing expedition. And now the AG proposes that each of my clients, three of whom are unemployed, could readily pay $9,000 each to an ESI vendor to conduct data searches. What for? The AG refuses to say.

Thirdly, the Attorney General refers to the "Defendants' continued refusal to engage in any discovery on remedies, . . ." These Defendants have been dancing to the Attorney General's discovery tune for weeks on end, running multiple searches based on more than 60 search terms, with token reductions for some defendants but not others that have only made matters more confusing. All the while, the AG has refused to meet and confer on the basic issue of relevance to remedies.

In sum, the AG's position is simply a non-negotiable demand to produce whatever it wants—whatever that is—with merely some reduction of search terms at the margins. It now demands that the Court order "Defendants to run certain search terms from the attached proposals in both their emails and text messages and produce all responsive documents, along with a privilege log for any documents withheld on that basis." But not a single word of explanation concerning relevance to remedies is offered to justify any burden, much less the ongoing burden their demands have already imposed.

These Defendants believe that a conference with Judge Karas will quickly resolve the scope of discovery as to remedies. We thus join in Defendant Gies's request for such a conference.

**Defendant Moscinski**

Fr. Moscinski concurs in the points raised by the other Defendants.

Defendant Moscinski ran the initial list of search terms submitted by the Attorney General's Office. That list generated approximately 25,000 hits. The Attorney General's Office submitted a revised list of search terms. Since the September 8, 2025, conference with Magistrate Krause, Defendant Moscinski ran this revised list of search terms submitted by the Attorney General's Office. That revised list resulted in almost 17,000 hits. While lower than 25,000, this is still an unreasonably large number of hits. On September 17, 2025, the Attorney General's Office submitted a second revised list of search terms. Based upon the prior hit list, it appears that the second revised list will still result in thousands of hits, which is still an unreasonably large number.

Defendant Moscinski, a Roman Catholic priest, took a vow of poverty when he became a member of the Franciscan Friars of the Renewal. He does not have the financial ability to pay for an outside vendor to assist in the discovery process. Defendant Moscinski spends his days operating a homeless shelter for adult males in the Bronx and ministering to the residents. Requiring him to continue to spend significant time running search terms that generate thousands of hits is unduly burdensome. There is no justification under Rule 26's relevance and proportionality standard, or under the Stipulation, for imposing such a burden on the Defendant.

Defendant Moscinski joins in the other Defendants' request for a conference with Judge Karas.

**PLAINTIFF'S POSITION**

The preceding four single-spaced pages are not a joint status update, as the Court ordered the parties to provide in its minute entry on September 6, 2025, but rather unsolicited and inappropriate legal argument.

Above, Defendants maintain their untenable position that they should conduct no discovery at all, despite stipulating to do so. ECF 82. The Court has repeatedly rejected this position and should do so again. Moreover, as Defendants continue to ignore this Court's general instructions that they engage in discovery in good faith and develop reasonable ESI protocols, Plaintiff respectfully requests that the Court specifically order them to run selected search terms across their emails and text messages and produce responsive documents, as well as a privilege log.

The actual status of discovery in this matter is as follows.

Counsel for Red Rose Rescue, Hinshaw, Goodman, and Connolly was the only one to engage in substantive discussions over ESI protocol since the last court conference. On September 15, 2025, he proposed limiting the search to only 3 terms, followed by a self-selected "sampling" of a handful of other terms in order, in his words, "to demonstrate lack of responsiveness."

In response, Plaintiff did not focus on the pre-determined outcome of counsel's proposed "sampling," but noted that sampling was unnecessary for terms that had been shown to produce a very small number of documents, such as the terms "Hempstead" and "Manhasset" in Monica Miller's email, which produced "only 2" and "only 4" hits, according to counsel. Plaintiff made a counter-proposal narrowing the search terms on September 18, attached as Exhibit A. Plaintiff expressly invited counsel to make another counter-proposal using the same document.

Counsel for Red Rose Rescue, Hinshaw, Goodman, and Connolly did not make a counter-proposal; did not run the amended searches; and did not engage further on developing an ESI protocol.[3]

Plaintiff made a similar proposal narrowing the search terms to counsel for Defendant Moscinski, attached as Exhibit B, and also expressly invited counsel to make a counter-proposal using the same document. Defendant Moscinski responded by attaching Plaintiff's prior, un-amended proposal, noting that it generated a high number of terms, and observing, "I don't believe that running your second revised list will reduce the hits to anywhere close to something reasonable." He refused to make a counter-proposal; to run the amended searches; or to engage further on developing an ESI protocol.

Plaintiff made a similar proposal narrowing the search terms to counsel for Defendant Gies, attached as Exhibit C, and also expressly invited counsel to make a counter-proposal using the same document. Defendant Gies did not make a counter-proposal; did not run the amended searches; and did not engage further on developing an ESI protocol. Instead, she simply sent the above text as a draft status update and asked that Plaintiff join Defendants' baseless request to refer discovery back to Judge Karas.

Plaintiff does not join Defendants' request. Instead, while this Court expressed reservations about doing so in the first instance, Plaintiff asks that it order Defendants to run certain search terms from the attached proposals in both their emails and text messages and produce all responsive documents, along with a privilege log for any documents withheld on that basis. Such an express order appears to be the only way to ensure that Defendants will engage in any meaningful discovery at all.

Finally, Plaintiff appreciates that Defendants did explore the costs of an ESI vendor, as this Court instructed, but notes that the quoted number of $45,000 appears to be inflated. First, on its face, the quote is an aggregate of all five individual and one organizational Defendants' costs. The cost per Defendant is therefore approximately $9,000—hardly an excessive amount for civil discovery involving litigants who have been found to repeatedly violate federal law. Second, the quote anticipates loading all Defendants' data from their entire email and phone accounts onto the platform, which is unnecessary, given that searches have already been run; the cost for

---

[3] Instead, counsel continued to send lengthy, outraged email screeds about how none of Plaintiff's discovery requests were relevant and demanding that Plaintiff engage in further discussion and answer written "queries" about his views on this point, which this Court heard at length in the status conference on July 29, 2025. Plaintiff did not do so.

loading and maintaining just the documents produced by the existing search terms would be much lower.  Finally, while counsel claims to have been unable to reach other vendors, there are much lower quotes available online for simpler services, including the following three platforms that Plaintiff identified for counsel in its email of September 12, 2025.  For example, the platform Digital WarRoom advertises rates of $250 per month for 25 GB.[4]  The platform GoldFynch advertises "eDiscovery you can afford", at $179 per month for 25GB.[5] And Logikcull advertises a rate of $25 per GB per month.[6]

However, Defendants have made clear that the price of an ESI vendor is not the issue.  After providing the quote to Plaintiff upon its request, counsel for Red Rose Rescue, Hinshaw, Goodman, and Connolly wrote on September 19, 2020, "Under no circumstances can my clients pay the expenses of an ESI vendor. It's just pointless."  Counsel for Defendant Gies chimed in, writing, "[P]lease understand that the total for all services is not the main problem. Defendants' objections start with the costs for data collection alone…just the initial cost of the data collection, **or even a tenth of that amount**, is disproportionate because…on their face the requests you have made will not locate any documents that would be relevant to the remedy phase of this litigation."  (emphasis added).

Defendants' continued refusal to engage in any discovery on remedies, in violation of the parties' stipulation and the basic rules of civil litigation, is outrageous and must end.  Plaintiff therefore respectfully requests that the Court identify specific search terms that Defendants must run across their emails and text messages, and/or set an in-person conference to do so.

Respectfully submitted,

/s/Catherine Short
Catherine Short
LIFE LEGAL DEFENSE FOUNDATION
P.O. Box 2105
Napa, CA 94558
(707) 337-6880

---

[4] "How Much Does e-Discovery Cost?" DWR e-discovery, (July 24, 2022), *available at* https://www.digitalwarroom.com/blog/how-much-does-ediscovery-cost#:~:text=1%2C795/YEAR/LICENSE-,Single%20Matter%3A%20Hosted,%24250/MONTH,-Private%20Cloud%3A%20Hosted.

[5] "e-Discovery You Can Afford," Goldfynch, *available at* https://goldfynch.com/pricing.html

[6] "Pay As You Go Cost Calculator," Logikcull, *available at* https://www.logikcull.com/staging-cost-calculator

| ESI Project Estimate | |
|---|---|
| Client Name | Life Legal Defense Foundation |
| Project Name | |
| Location/Currency | **United States/USD** |
| Estimated Total | $ 45,431.51 |



### Data Collection

| Description | Unit | Quantity | Price | Total |
|---|---|---|---|---|
| ESI Collection | Hour | 27 | $275.00 | $7,425.00 |
| IG-Epiq Chat Connector (ECC) | Mailbox/Device | 5 | $500.00 | $2,500.00 |
| Threading + Modern Attachment Transformation for Chat & Mobile Data | Hour | 4 | $195.00 | $780.00 |
| Forensic Project Manager | Each | 6 | $99.78 | $598.68 |
| 1TB SSD Hard Drive | Device | TBD | $1,325.00 | TBD |
| Mobile Device Express Collection (MDEC) | Device | TBD | $1,100.00 | TBD |
| | | | Total | $11,303.68 |

**\*Key Assumptions:**

1. Epiq will remotely collect 6 custodians email and phones totaling 8 email accounts and 5 phones. For purposes of this estimate we are assuming iPhones and all will be collected via iCloud. RSMF load files will be generated for review of the collected mobile data.

2. Two copies of all collection data will be made as a standard process.  If the client requests Epiq to make less than two copies, the client accepts all risk associated with this lack of redundancy

3. All device imaging/collection will be scheduled in succession/parallel with no down time

4. Webmail collections (Gmail, Yahoo!, other IMAP/POP3, etc.) will be performed remotely from Epiq's forensic laboratory. Actual collection time may vary from hours to days to complete due to volume, download speed and potential throttling by the Service Provider. However, Epiq only bills technician time, not machine time.

5. 15GB Web based mailbox per custodian (M365, Google Vault, etc.)

6. Mobile devices are iOS based, 64GBs storage, passcode and/or password encryption key will be provided.  Devices are not managed by a central IT Mobile Device Management or ActiveSync policy.  Relevant third-party applications will be discussed and made apparent to consultant prior to collection.

7. Forensic Project Management time will be billed as incurred to coordinate resources, provide project updates and facilitate project workflow and communication.

8. Costs for all associated shipping and related fees will be billed at cost.   Projects with remote collections will generally have round trip shipping for each remote collection kit.   Please contact your forensic project manager with any questions.

9. The client or the client's IT staff should contact Epiq if there is concern about these assumptions, or these assumptions clearly do not fit the project.

**After kickoff discussion with IT:**

10. Proper IT support from client for all server-based data/applications

11. Client, custodian or client IT will provide all passwords, iTunes Backup Encryption passwords, passcodes, encryption keys, biometric or any other information required to access the device(s).  Epiq does not "jailbreak" or "root" devices or otherwise circumvent their security protections.

| Description | Unit | Quantity | Price | Term/Mths | Total |
|---|---|---|---|---|---|
| **Processing + Hosting + Production (Epiq Discovery)** | | | | | |
| **Processing + Hosting + Production Services** | | | | | |
| Data Volume Received for Ingestion | GB | 330.00 | | | |
| Data Expansion % | % | 50.00% | | | |
| Data Volume Ingested | GB | 495.00 | $ 45.00 | | $ 22,275.00 |
| Volume Hosted for Epiq Discovery ECA | GB/Mo | 420.75 | $ 2.00 | 3.00 | $ 2,524.50 |
| % of Data Promoted to Review | % | 15.00% | | | |
| Review-only Hosting (first month) | GB/Mo | 74.25 | $ 5.50 | 1.00 | $ 450.00 |
| Production % of Review Data | % | 15.00% | | | |
| Document Production | GB | 11.14 | $ 175.00 | | $ 1,949.06 |
| Revire Plus Production Hosting (Months 2-3) | GB/Mo | 85.39 | $ 5.50 | 2.00 | $ 939.26 |
| Review Hosting Minimum Fee | Month | | $ 450.00 | - | $ - |
| User Fees - NO CHARGE | User/Mo | - | $ - | 3.00 | $ - |
| **Additional Hosting Services** | | | | | |
| Automated Transcription | AV/Hour | - | $ 9.50 | | $ - |
| Machine Translation Services | Doc | - | $ 0.75 | | $ - |
| Automated Redactions | Doc | - | Included | | Included |
| **Professional Services** | | | | | |
| Client Services Project Manager | Hour | 25.00 | $ 210.00 | | $ 5,250.00 |
| Technical Analyst/Litigation Support | Hour | 4.00 | $185.00 | | $740.00 |
| **Total** (assumes physical + FTP media is not stored longer than 3 months) | | | | | $ 34,127.83 |

**Assumptions:**

- 330 GB incoming data for processing
    - Average 5 GB per email account per year
    - Average 10 GB per mobile device
- 50% data expansion for processing
- 85% reduction from ECA
- Production of 15% of review data volume after 1 month
- Total 3 months hosting

**This is a cost estimate, not a firm price quote.** Epiq uses its best efforts to estimate time and costs, but many factors beyond Epiq's control may exist. If any of the assumptions made in this estimate turn out to be incorrect once the collection takes place, the ultimate costs may differ significantly from this estimate. Please contact your Epiq sales representative or collections project manager at any time to discuss actual costs vs. estimated costs.

**7:23-cv-04832-KMK-AEK James v. Red Rose Rescue et al**
**Discovery Search Results: August 22, 2025**

| ↓ NAME SEARCH RESULTS | ↓ TERM SEARCH RESULTS |
|---|---|
| **1. MILLER SEARCH RESULTS** ||
| Adele Gilhooly: 2 | AG: 70 emails |
| Audrey Whipple: 13 | Abortion Mill: 242  *AND "New York" or "NY"* |
| Bernadette Patel: 3 | "All Women's Care": 3 |
| Bud Shaver: 4 | "All Women's Health": 4 |
| Christopher Moscinski: 21 | ~~Arrest~~: about 200 emails |
| Christy Anne Collins: 10 | ~~Attorney General~~: hundreds of emails |
| David Nix: 0 | Buffer: 36 emails |
| Elizabeth Wagi: 4 | Clinic: 179 emails  *AND "New York" or "NY"* |
| Eric Holmberg: 9 | Contempt: 60 emails |
| Grace Woo: 0 | Convict: 53 emails |
| Heather Idoni: 5 | ~~Court~~: 100s |
| Herb Geraghty: 1 | CPLS: 108 |
| Jacob Gregor: 8 | Distance: 127 emails |
| Jay Smith: 4 | Feet: 104 emails |
| Jean Marshall: 2 | Fundraise: 69 |
| Joan Andrews Bell: 3 | Hempstead: Only 2 |
| Joan McGee: 1 | Injunction: 53 emails |
| John Hinshaw: 5 | Invasion: 79 emails |
| Jonathan Darnel: 8 | ~~James~~: 100s of emails |
| Julia Haag: 7 | ~~Judge~~: 100s of emails |
| Laura Gies: 38 | Leticia: 30 emails |
| Lauren Handy: 6 | Letitia 37 emails |
| Linda Mueller: 1 | Manhasset: Only 4 emails |
| Matthew Connolly: 15 | ~~Member~~: 100s |
| Michael Webb: 0 | ~~New York~~: hundreds of emails |
| Pam Gesund: 8 | Participant: 125 |
| Patrice Woodworth: 12 | Planned Parenthood: 229 |
| Paulette Harlow: 8 | Recruit: 26 |
| Robert Kovaly: 3 | Rescue: 228 |
| Stephanie Berry: 2 | "Red Rose": 124 |
| Stephen Imbarrato: 2 | RRR: 80 |
| Tony Puckett: 0 | Trespass: 41 several old emails |
| Will Goodman: 7 | ~~Trial~~: 182 emails |
|  | White Plains: 12 |
| *Cut all names*  **2. GOODMAN SEARCH RESULTS**  *Run terms against correspondence with identified individuals* ||
| ~~Adele Gilhooly~~: ~200 hits | AG: ~200 hits |
| ~~Bernadette Patel~~: 37 hits | Abortion mill: ~ 500 hits  *AND "New York" or "NY"* |
| ~~Bud Shaver~~: 41 hits | All Women's Care: 7 hits |
| ~~Christopher Moscinski~~: 73 hits | All Women's Health: 15 hits |
| ~~Christy Anne Collins~~: 0 hits. | ~~Arrest~~: ~300 hits |
| ~~Dave Nix~~: 177 hits | ~~Attorney General~~: ~450 hits |

1 | 4

| | |
|---|---|
| ~~David Gregor~~: 5 hits | Buffer: ~200 hits |
| ~~Elizabeth Wagi~~: 62 hits | Clinic: ~650 hits  *AND "New York" or "NY"* |
| ~~Eric Holmberg~~: 22 hits | Contempt: ~300 hits |
| ~~Heather Idoni~~: 90 hits | ~~Convict~~: ~300 hits |
| ~~Herb Geraghty~~: 54 hits | ~~Court~~: ~350 hits |
| ~~Jacob Gregor~~: 35 hits | CPLS: ~200 hits |
| ~~Jay Smith~~: 44 hits | Distance: ~100 hits |
| ~~Jean Marshall~~: ~400 hits | Feet: ~350 hits |
| ~~Joan Andrews~~ Bell: 167 hits | ~~Fundraise~~: ~500 hits |
| ~~Joan McKee~~: ~250 hits | Hempstead: 62 hits |
| ~~John Hinshaw~~: ~450 hits | Injunction: ~300 hits |
| ~~Johnathan Darnel~~: ~350 hits | Invasion: 12 hits |
| ~~Julia Haag~~: ~250 | ~~James~~: ~250 hits |
| ~~Laura Gies~~: ~350 hits | ~~Judge~~: ~400 hits |
| ~~Lauren Handy~~: ~400 hits | Leticia James: 55 hits |
| ~~Linda Mueller~~: ~300 hits | Leticia: 39 hits  *missing "Letitia"* |
| Matthew ~~Connol~~ly: ~400 hits | Manhasset: 30 hits |
| ~~Michael Webb~~: 85 hits | ~~Member~~: ~1000 hits |
| ~~Monica Migliorino~~ Miller: ~150 hits | New York: ~300 hits |
| ~~Pam Gesund~~: 8 hits | ~~Participant~~: ~700 hits |
| ~~Paulette Harlow~~: ~400 hits | Planned Parenthood: ~1600 hits  *AND "New York" or "NY"* |
| ~~Robert Kolavy~~: 32 hits | ~~Recruit~~: ~800 hits |
| ~~Robert Kovaly~~: 31 hits | Red Rose: ~900 hits |
| ~~Stephanie Berry~~: 2 hits | Rescue: ~1600 hits |
| Stephen ~~Imbarrato~~: ~250 hits | RRR: ~600 hits |
| ~~Tony Puckett~~: 38 hits | Trespass: ~200 hits |
| | ~~Trial~~: ~400 hits |
| | White Plains: ~120 hits |

### 3. HINSHAW SEARCH RESULTS

| | |
|---|---|
| Adele Gilhooly: 2 | Abortion mill: 3 |
| Audrey Whipple: 30 | AG: 3 |
| Bernadette Patel: 100-200 | All Women's Care: >100 |
| Bud Shaver: 9 | All Women's Health: 0 |
| Christopher Moscinksi: 23 | Arrest: 5 |
| Christy-Anne Collins: 1 | Attorney General: 2 |
| Dave Nix: 3 | Buffer: 2 |
| David/Jacob (?) Gregor: 3 | Clinic: 100s  *AND "New York" or "NY"* |
| Elizabeth Wagi: 2 | Contempt: 5 |
| Eric Holmberg: 2 | Convict: 3 |
| Grace Woo: 3 | Court: 4 |
| Heather Idoni: 6 | CPLS: 2 |
| Herb Garaghty: 72 | Distance: 2 |
| Jay Smith: 11 | Feet: 3 |
| Jean Marshall: 2 | Fundraise: 3 |

| | |
|---|---|
| Joan Andrews Bell: 21 | Hempstead: at least 50 |
| Joan McKee: 6 | Injunction: 3 |
| ~~John Hinshaw:~~ 100s | Invasion: 3 |
| Jonathan Darnel: 0 | James: 3 |
| Julia Haag: 5 | Leticia: 4 |
| Laura Gies: 46 | Letitia: 3 |
| Lauren Handy: 13 | Manhasset: 7 |
| Linda Mueller: 2 | ~~Member:~~ 100s |
| Matthew Connolly: 0 | ~~New York~~: 100s |
| Michael Webb: 2 | Participant: 4 |
| Monica Miller: 29 | Planned Parenthood: 100s   AND "New York" or "NY" |
| Pam Gesund: 7 | Recruit: 2 |
| Patrice Woodworth: 6 | "Red Rose": 19 |
| Paulette Harlow: 9 | RRR: 1 |
| Robert Kolavy: 5 | Trespass: 7 |
| Stephanie Berry: 34 | Trial: 3 |
| Stephen Imbarrato: 3 | White Plains: 2 |
| Tony Puckett: 3 | |
| William: or "Will" Goodman: 13 | |

Cut all names      **4. CONNOLLY SEARCH RESULTS**      Run terms against correspondence with identified individuals

| | |
|---|---|
| ~~Adele Gillooly: ~170~~ | AG: ~ 175 |
| ~~Audrey Whipple: ~75~~ | Abortion Mill: ~350   AND "New York" or "NY" |
| ~~Bernadette Patel: ~92~~ | "All Women's Care": ~15 |
| ~~Bud Shaver: ~25~~ | "All Women's Health": ~9 |
| ~~Christopher Moscinski: ~694~~ | ~~Arrest: ~1,150~~ |
| ~~Christy Anne Collins: 0~~ | Attorney General: ~725 |
| ~~David Nix: 17~~ | Buffer: ~75 |
| ~~Elizabeth Wagi: 154~~ | Clinic: ~2,275   AND "New York" or "NY" |
| ~~Eric Holmberg: 29~~ | Contempt: ~125 |
| ~~Grace Woo: 15~~ | Convict: ~75 |
| ~~Heather Idoni: ~90~~ | ~~Court: ~4,950~~ |
| ~~Herb Geraghty: 114~~ | CPLS: ~146 |
| ~~Jacob Gregor: 89~~ | ~~Distance: 400~~ |
| ~~Jay Smith: 103~~ | ~~Feet: 900~~ |
| ~~Jean Marshall: 390~~ | ~~Fundraise: 1,404~~ |
| ~~Joan Andrews Bell: ~429~~ | Hempstead: ~75 |
| ~~Joan McGee: (McKee) ~263~~ | Injunction: ~235 |
| ~~John Hinshaw: ~278~~ | Invasion: ~175 |
| ~~Jonathan Darnel: 465~~ | ~~James: ~1,360~~ |
| ~~Julia Haag: 264~~ | ~~Judge: ~2,125~~ |
| ~~Laura Gies: 578~~ | Leticia: ~52 |
| ~~Lauren Handy: ~499~~ | Letitia: ~30 |
| ~~Linda Mueller: ~428~~ | Manhasset: ~42 |
| ~~Michael Webb: ~121~~ | ~~Member: ~2,161~~ |

| | |
|---|---|
| ~~Monica Miller: 906~~ | ~~New York: 2,140~~ |
| ~~Pam Gesund: 37~~ | Participant: ~175 |
| ~~Patrice Woodworth: ~750~~ | Planned Parenthood: ~4,050   AND "New York" or "NY" |
| ~~Paulette Harlow: ~775~~ | Recruit: ~194 |
| ~~Robert Kovaly: 264~~ | Rescue: ~2,576 |
| ~~Stephanie Berry: 50~~ | "Red Rose": ~552 |
| ~~Stephen Imbarrato: 364~~ | RRR: ~499 |
| ~~Tony Puckett: 23~~ | Trespass: ~197 |
| ~~Will Goodman: ~1,246~~ | ~~Trial: ~1,975~~ |
| | White Plains: ~76 |

TEXTS:

PLEASE LET US KNOW THE NUMBERS OF TEXTS PRODUCED FOR THESE TERMS LIMITED TO THE ABOVE INDIVIDUALS

Defendant Moscinski: Proposed Search Terms 9-18-25

**Names of known RRR participants**

**CUT ALL NAMES**

~~Christy Anne Collins 14~~
~~Eric Holmberg 5~~
~~Matthew Connolly 204~~
~~William (or "Will") Goodman 909~~

~~Laura Gies 622~~
~~John Hinshaw 160~~
~~Joan Andrews Bell 122~~
~~Stephen Imbarrato 270~~
~~Julia Haag 216~~

~~Joan McKee 210~~
~~Lauren Handy 324~~
~~Linda Mueller 228~~
~~Michael Webb 72~~
~~Patrice Woodworth 313~~
~~Robert Kolavy 15~~
~~Monica Miller 798~~
~~Adele Gilhooly 178~~
~~Dave Nix 205~~
~~Tony Puckett 12~~
~~Grace Woo 4~~
~~Bud Shaver 167~~
~~Jonathan Darnel 287~~
~~Jay Smith 62~~
~~Paulette Harlow 255~~
~~Jean Marshall 40~~
~~Heather Idoni 37~~
~~Herb Garaghty 35~~
~~Stephanie Berry 88~~
~~Audrey Whipple 76~~
~~Pam Gesund 5~~
~~Bernadette Patel 60~~
~~Elizabeth Wagi 100~~
~~Jacob Gregor 49~~
~~David Gregor 0~~
~~Paulette Harlow 255~~

**General search terms**:

**RUN AGAINST CORRESPONDENCE WITH THE ABOVE INDIVIDUALS**

~~Red 1047~~
~~Rose 1154~~
"Red Rose"
Rescue 1157
RRR 722
Trespass 237
Invasion 77
~~Arrest 760~~
Convict 75
Injunction 59
Buffer 67
Feet 458
Distance 194
~~Court 1772~~
~~Judge 1087~~
~~Trial 926~~
Contempt 130
Recruit 265
~~Member 2742~~
Participant 418
~~Director 2116~~
Fundraise 226
Citizens for Prolife Society 214
Invasion 75
Clinic 1049                               AND "NEW YORK" OR "NY"
Abortion mill 972                         AND "NEW YORK" OR "NY"
Planned Parenthood 1493                   AND "NEW YORK" OR "NY"
 All Women's Care 4
All Women's Health 10
~~New York 2306~~
AG 112
Letitia 49
Leticia 24
~~James 811~~
Attorney General 254
AG 112
Manhasset 23
White Plains 309
Hempstead 318

**Texts:**

**PLEASE LET US KNOW THE NUMBERS OF TEXTS PRODUCED FOR THESE TERMS, LIMITED TO THE ABOVE INDIVIDUALS**

Defendant Gies: Proposed Search Terms 9-18-25

**NAMES OF KNOWN RRR PARTICIPANTS**

**CUT ALL**

1. ~~Christy-Anne Collins 32~~

2. ~~Eric Holmberg 58~~

3. ~~Christopher Moscinksi 284~~

4. ~~Matthew Connolly 371~~

5. ~~William (or "Will") Goodman 405~~

6. ~~Laura Gies n/a~~

7. ~~John Hinshaw 251~~

8. ~~Joan Andrews Bell 279~~

9. ~~Stephen Imbarrato 72~~

10. ~~Julia Haag 49~~

11. ~~Joan McKee 68~~

12. ~~Lauren Handy 275~~

13. ~~Linda Mueller 428~~

14. ~~Michael Webb 22~~

15. ~~Patrice Woodworth 395~~

16. ~~Robert Kolavy 13~~

17. ~~Monica Miller 1094~~

18. ~~Adele Gilhooly 31~~

19. ~~Dave Nix 69~~

20. ~~Tony Puckett 11~~

21. ~~Grace Woo 108~~

22. ~~Bud Shaver 15~~

23. ~~Jonathan Darnel 200~~

24. ~~Jay Smith 186~~

25. ~~Paulette Harlow 592~~

26. ~~Jean Marshall 351~~

27. ~~Heather Idoni 131~~

28. ~~Herb Garaghty 6/ 156~~

29. ~~Stephanie Berry 88~~

30. ~~Audrey Whipple 181~~

31. ~~Pam Gesund 92~~

32. ~~Bernadette Patel 195~~

33. ~~Elizabeth Wagi 245~~

34. ~~Jacob Gregor 179~~

35. ~~David Gregor 173~~

**GENERAL TERMS**

1. ~~Red 3696/1444~~

2. ~~Rose 2264/1842~~  "Red Rose"

3. Rescue 1626

4. "RRR" 674

5. Trespass 306

6. Invasion 292

7. ~~Arrest 1362/615~~

8. ~~Convict 1056/54~~

9. Injunction 224

10. Buffer 130

11. Feet           LIMITED TO RRR PARTICIPANTS (0)

12. Distance       LIMITED TO RRR PARTICIPANTS (0)

13. ~~Court 3879/3348~~

14. ~~Judge 2015/1681~~

15. ~~Trial 1709/1531~~

16. "Contempt" 249

17. Recruit     LIMITED TO RRR PARTICIPANTS (1)

18. ~~Member 5055/2736~~

19. Participant     LIMITED TO RRR PARTICIPANTS (1)

20. ~~Director 2371/2199~~

21. ~~Fundraise     LIMITED TO RRR PARTICIPANTS (0)~~

22. ~~Citizens for Prolife Society~~     "CPLS"

23. Invasion 292

24. Clinic 1561     AND "NEW YORK" OR "NY"

25." Abortion mill" 225     AND "NEW YORK" OR "NY"

26. "Planned Parenthood" 450     AND "NEW YORK" OR "NY"

27. "All Women's Care" 19

28. "All Women's Health" 19

29. ~~New York 3573/3487~~

30. "AG" 316

31. "Letitia" 88

32. "Leticia" 81

33. ~~James 1428/1338~~

34. "Attorney General" 458

35. "Manhasset" 88

36." White Plains" 199

37. "Hempstead" 65

**TEXTS:**

**PLEASE LET US KNOW THE NUMBERS OF TEXTS PRODUCED FOR THESE TERMS, LIMITED TO THE ABOVE INDIVIDUALS**