**Thomas More SOCIETY**
LIFE · FAMILY · FREEDOM

**BY ECF**

January 5, 2026

Hon. Andrew E. Krause
United States Courthouse
300 Quarropas Street
White Plains, New York 10601

Re:   **People v. Red Rose Rescue, et al., 23 Civ. 4832 (KMK)**
      **Status Report Including Discovery Protocol**

Dear Judge Krause:

      We write to provide this status report on the progress of discovery in this case. Following Your Honor's suggestion to propose a compromise approach to the outstanding RPDs, we decided not merely to propose the compromise outlined in our memorandum of law opposing the pending motion to compel but to actually execute the compromise approach to searching and production without prejudice to prior objections. The result was 507 pages of material responsive to RPDs Nos. 6, 7, and 8 (which involves the same material produced in response to No. 6).

      We did this by requesting and obtaining direct access to our clients' email accounts so we could conduct comprehensive searches for responsive material ourselves. The discovery process was conceptualized and executed by a paralegal with a corporate technical background and skill set. The approach was designed to use suitably-tailored search terms and date range parameters to effectively isolate responsive documents efficiently and with minimal de-duplication.

      Similar searches will also be conducted on Defendants' text messages as soon as this can be arranged, a process we are presently coordinating with our clients.

      We have served these documents on opposing counsel this morning after working over the last few days to prepare them with Bates numbering and redactions, under the terms of the standing confidentiality order, while preserving all outstanding objections indicated in our opposition memo. In the hope of resolving this discovery dispute, we of course have no objection to any extension of time the AG may require, if any, for her reply in view of this document production.

      A detailed breakdown of the discovery protocol which was used was provided to the AG, and a copy of that protocol is also attached for Your Honor's reference. As noted, we will update the Court on further results as to Defendants' text messages.

      Respectfully submitted,

      /s/ Christopher A. Ferrara
      Christopher A. Ferrara – Senior Counsel
      THOMAS MORE SOCIETY
      148-29 Cross Island Parkway
      Whitestone, Queens, NY 11357
      Counsel for Defendants Connolly,
      Goodman, Hinshaw and Red Rose Rescue

**DISCOVERY PROTOCOL**
**JANUARY 5, 2026**

## GENERAL EMAIL DISCOVERY PROTOCOLS:

1. The discovery process was conceptualized and executed by a paralegal with a corporate technical background and skill set. The approach was designed to isolate genuinely responsive documents efficiently and with minimal de-duplication.

2. The searches were conducted on personal email accounts for Defendants, **to which we were given direct access**, with almost all content coming from Gmail accounts and some responsive documents exchanged with Defendants RRR (Miller) and Connolly produced from Defendant Goodman's Proton account. (Goodman's Proton account fell out of use in 2022 except for two responsive emails in that account in 2023, which have also been produced.) Some duplication of Proton emails offered is due to its conversation format threads showing new information being added to the same thread on subsequent dates.

3. The documents isolated using this process constitute an accurate representation of the universe of documents that would be considered responsive to RPD Nos. 6 and 7, thus providing the full extent of any possible "new" information discovery would produce.

4. The entire search process (not including redaction of non-party names and personally identifying information, including phone numbers, email and home addresses) required only approximately fifteen (15) hours at a paralegal's hourly rate vs. the estimated ESI cost of $45,000 for less focused and less efficient searches.

5. The responsive email documents for each Defendant were consolidated for that specific Defendant into a single PDF for each related RPD and Bates numbered. Each PDF contains bookmarks for each responsive email showing the email's file name per the naming convention noted below: "SEARCH TERM – Date [yyyy-mm-dd] – Email Subject Line"

    This makes it possible to determine *which search term* the email was responsive to and the *date of the exchange*. This is helpful especially when looking for clinic-based planning, as happened with past rescues, vs. general RRR open-ended planning.

6. Some emails are provided twice to indicate they are responsive to different *clinic location* search terms and planning.

7. The majority of email documents came from Defendant Matthew Connolly's Gmail account, as his was the first email account searched and he is included on every RRR email sent out to the RRR email list (maintained by Monica Miller). **Defendant Hinshaw had no responsive documents that were not duplicative of those already produced for the other Defendants.**

    Once Connolly's responsive documents were isolated, searches were conducted on the other Defendants' accounts and all emails found were duplicative of emails found in Connolly's account. (The same is true of Goodman's Proton Mail account which contains the same emails as those found in the other Defendants' accounts.)

8. Our direct review of the email accounts shows that Defendants' Gmail accounts are the ones used for RRR's email list (which originates from Miller's personal email address) for RRR planning, updates and email blasts.

## EMAIL DOCUMENT SEARCHES
## AND PRODUCTION

**RPD No. 6:** Request No. 6 seeks "All documents and communications regarding where, when, and how to conduct an Invasion, including but not limited to any documents or communications concerning internal policies, procedures, or practices for making such decisions."

1. The searches were conducted on *personal email accounts* for Defendants, the vast majority of these emails being initiated by Monica Miller, with Defendants being included as recipients in the email blast list.

2. Other than the content already published on Red Rose Rescue's (RRR) public facing website, no other documents responsive to RPD No. 6 exist aside from emails.

3. The objective of the searches was to locate any emails that would contain information concerning the manner in which abortion clinics and providers are *selected* for Red Rose Rescues, and

4. any information exchanged between the Defendants that would convey the manner in which such rescues are *planned and strategized* once a site for a Rescue is selected,

5. Emails found typically discussed the following concepts and fully represent the extent to which such information, if any, would be discoverable in these documents:

    a. preliminary thoughts on site selection for new Rescues

    b. details about planned Rescues

    c. soliciting volunteers to participate

6. *Each responsive email* was then saved with the following naming convention:

    a. "SEARCH TERM – Date [yyyy-mm-dd] – Email Subject Line"

7. Given the very specific tailoring of the search criteria, the search methodology (further detailed below) and the naming convention used, it was a simple matter to de-duplicate any responsive emails found in the Defendants' email accounts.

8. The searches were based upon:

    a. The terms "Red Rose Rescue", "RRR" and

    b. The list of targeted search terms noted below that tied results to the twenty-eight (28) alleged Rescue *dates* and *locations* cited in the AG's original complaint (ECF-1), as the most efficient way to narrow search results to any documents

discussing those Rescues, how the Rescue sites were selected and/or the Rescues planned.

When isolating for *dates* related to cited Rescues, searches included any emails exchanged during *the preceding month* and *the day of the Rescue* and *through the end of that same week or month* for possibly responsive content.

Thus, the following search terms were used to isolate such documents, either using the *name of city, or clinic, or both*, depending on the uniqueness of the terms and the effectiveness of producing responsive results:

   i. Alexandria, [VA]
  ii. All Women's Care
 iii. All Women's Health
  iv. Bedford [Heights OH]
   v. Capital Women's Services
  vi. Delta – Baton Rouge, LA
 vii. Garden State Gynecology Morristown NJ
viii. Heritage Clinic [Grand Rapids]
  ix. Locust [Street Surgical]
   x. Manhasset
  xi. New Mexico
 xii. Northeast [Ohio Women's Center]
xiii. Northland
 xiv. [Options for Women] Plainfield NJ
  xv. Pilgrim Medical Montclair
 xvi. Surgi-Clinic DC
xvii. Trenton Health Center
xviii. West Chester Health Center, PA
 xix. White Plains
  xx. Women's Center
 xxi. [Women's Center] Flint MI
xxii. [Women's Center] Bloomfield MI
xxiii. [Women's Center] Sterling MI

c. Results were further narrowed down by using Boolean operators to exclude large numbers of repetitive, non-responsive content from such sources as Pro-life News sites.

This approach produced quite manageable outcomes, since the searches could also be narrowed to the date range of the Rescues, the time during which any emails planning or discussing Rescues might be exchanged.

**DISCOVERY PROTOCOL**
**JANUARY 5, 2026**

**RPD No. 7:** Request 7 seeks "all documents and communications regarding the obligations of members, participants, officers, agents, servants, employees, and attorneys of Red Rose Rescue and individual Defendants to comply with the preliminary injunction issued on December 15, 2023 (Dkt. No. 62)."

1. Searches were *date limited* to any emails exchanged following the Preliminary Injunction on December 15, 2023 because, as is evident, there could be no discussion of compliance with the Injunction before it existed.

2. The search terms used were "injunction", "15 feet", "30 feet", "buffer". The large number of non-responsive results were narrowed by including Defendant Monica Miller as the Sender to isolate responsive documents, as she was invariably either the source of such emails, or the person replying to any emails related to the preliminary injunction.

**RPD No. 8:** Request No. 8 seeks "All documents and communications concerning any facility that provides reproductive health services in the State of New York."

1. This request is understood as duplicative of RPD No. 6 if understood as referring to *past* rescues in the State of New York (no *future* rescues being planned in New York State as stated in response to RPD No. 9, as to which no documents exist). Any responsive documents as to RPD No. 8 are thus included in the response to RPD No. 6.

**DOCUMENT BATES NUMBERS**
**FOR RPD Nos. 6 & 7**

| DEFENDANT | RPD 6 | RPD 7 |
|---|---|---|
| CONNOLLY | BATES: 2025 CONNOLLY - 0001 - 0375 | BATES: 2025 CONNOLLY - 0376 - 0400 |
| GOODMAN | BATES: 2025 GOODMAN - 0001 - 0100 | No Responsive Documents |
| RRR | BATES: 2025 RRR - 0004 - 0023 | BATES: 2025 RRR - 0001 - 0003 |