UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X   Case No. 7:23-cv-04832

People of the State of New York, by LETITIA JAMES, Attorney General of the State of New York,

                              Plaintiff,

        -against-

RED ROSE RESCUE, CHRISTOPHER MOSCINSKI, MATTHEW CONNOLLY, WILLIAM GOODMAN, LAURA GIES, JOHN HINSHAW, AND JOHN AND JANE DOES, the last two named being fictitious names, the real names of such persons being currently unknown but who are active in Red Rose Rescue or act in concert with the above-named individuals or organization to engage in, or who will engage in, the conduct complained of herein,

                              Defendants.

------------------------------------------------------------------------X

# REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL

                          **LETITIA JAMES**
                          New York State Attorney General
                          28 Liberty St., 20th Floor
                          New York, New York 10005
                          (212) 416-8250

        By:    
                          Sandra Pullman
                          Senior Counsel, Civil Rights Bureau
                          Heather McKay
                          Assistant Attorney General
                          Julia Toce
                          Assistant Attorney General
                          Zoe Ridolfi-Starr
                          Assistant Attorney General

Since Plaintiff filed its motion to compel, Defendants Red Rose Rescue, Connolly, Hinshaw, Goodman, and Moscinski opposed the motion and subsequently made a production of emails and text messages that they characterize as responsive to two of the four document requests that Plaintiff moved to compel. They heavily redacted the documents, however, and accordingly Plaintiff cannot assess whether they are sufficient to respond to the two requests they purport to respond to. Plaintiff continues to pursue its motion to compel, as Defendants do not even claim to have searched or produced responsive documents to two of the four requests. In addition, they have refused to search for, or even discuss, responsive documents in their social media posts or direct messages.

Defendants Gies has still not produced a single document and has not made any counter-proposal of her own. However, per documents contained in the other Defendants' production, both Defendants Gies and Moscinski have discussed using an encrypted email service and advised others to do the same, in order to avoid detection of their plans to unlawfully invade reproductive health clinics. Defendant Moscinski—who instructed others to delete at least one message that he accidentally sent by Gmail—maintains that he no longer has access to his encrypted account, and he has provided no information about how and whether he took steps to obtain access to it. Defendant Gies, who is described as planning Rescues solely on encrypted mail, maintains that she lost her password to the account at some point "in 2022" and then failed to take any further steps to re-set it or otherwise preserve these documents once this lawsuit was filed. Plaintiff seeks an order compelling Defendant Gies to produce responsive documents, and also compelling both Defendants to provide information about their efforts to preserve responsive documents on their encrypted email addresses.

1

Finally, all Defendants continue to refuse to respond to Plaintiff's interrogatories, without any legal basis. Plaintiff accordingly asks this Court to order Defendants to cease their obstructive tactics and produce this relevant, non-privileged information once and for all.

**I.       Defendants Red Rose Rescue, Connolly, Goodman, Hinshaw, and Moscinski Must Produce Unredacted Documents and Responses to Requests 4 and 8**

Defendants' recent production[1] appears to contain some responsive information that is relevant to Plaintiff's claim for an expanded injunction—i.e. discussions of planning Rescues in other areas of New York, not presently covered by the preliminary injunction; discussions of the existing injunction as ineffective; and statements regarding their refusal to abide by court orders or "man's law." However, it is heavily redacted. Defendants painstakingly redacted not only every email address, phone number, and mailing address, but every name of every single person, other than named Defendants, contained in the documents. Those names include people who were involved in planning, supporting, and carrying out unlawful invasions of clinics as a part of a coordinated Rescue. These inappropriate redactions, which must have required extensive time and resources, have no basis in law and, moreover, make the documents nearly impossible to decipher: in most cases, it is impossible to tell who is writing, who is receiving the information, and what groups they are discussing.

When asked for the basis for the redactions, counsel merely asserted that the information was "non-responsive." This position is clearly invalid. First, non-responsive information contained in otherwise responsive documents is not appropriately redacted. If a document is generally responsive and nonprivileged, it should be produced in full.

---

[1] Both Defendant Moscinski's emails and the other Defendants' text messages were provided to Plaintiff on January 12, 2026, the day before this reply brief was filed. As a result, Plaintiff has not yet been able to review the substance of those productions, other than to confirm that they are similarly redacted.

2

This principle is well settled in federal courts in New York. "The weight of authority in this Circuit goes against allowing a party to redact information from admittedly responsive and relevant documents "based on that party's unilateral determinations of relevancy." *Christine Asia Co. v. Alibaba Grp. Holding Ltd.,* 327 F.R.D. 52, 54 (S.D.N.Y. 2018) (citing *Cyris Jewels v. Casner*, No. 12-CV-01895 (KAM) (SLT), 2016 WL 2962203, at *4 (E.D.N.Y. May 20, 2016) (citing cases rejecting defendants' requests for redaction of irrelevant text within relevant documents); *Durling v. Papa John's Int'l, Inc.*, No. 16-CV-03592 (CS) (JCM), 2018 WL 557915, at *9 (S.D.N.Y. Jan. 24, 2018); *John Wiley & Sons. Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014); *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, No. 08-CV-0333 (RJH) (DFE), 2009 WL 1026013, at *1 (S.D.N.Y. Apr. 8, 2009) (directing parties not to "redact any portion of a document on the ground that the portion is non-responsive and irrelevant" because such redactions "breed suspicions" and "may deprive the reader of context"); *In re Restasis (Cyclosporins Opthalmic Emulsion) Antitrust Litig.*, No. 18-MD-2819 (NG) (LB), 2018 WL 3007926, at *1 (E.D.N.Y. June 4, 2018) (party should not be permitted to unilaterally decide to redact portions of a responsive document because it determines that they are competitively sensitive and not relevant)).

Second, the redacted information is in fact responsive to Request number 4, which asks for "[d]ocuments sufficient to identify all officers, agents, servants, employees, and attorneys of Red Rose Rescue." Defendants' desire to avoid providing information responsive to that Request—when it is not only included in documents they already produced, but took additional resources to excise—is not a basis upon which to redact it. Notably, while this Court has questioned how broad Request number 4 should be, and Plaintiff responded by eliminating its detailed, exemplary sub-parts, the names of these individuals are well within the core definition

of the phrase in Federal Rule of Civil Procedure 65: they are people who planned, participated in, and provided material support for Rescues. Defendants' refusal to provide this information is consistent with its position that the injunction that binds Red Rose Rescue somehow does not bind any individuals as a part of that organization. This position is not only illogical but is belied by the plain language of the federal rules.

Finally, any concern that Defendants may have about the public exposure of these names is easily countered by the confidentiality order in effect. In *Durling,* the court emphasized, "Redactions on grounds of non-responsiveness or irrelevance are generally impermissible, especially where ... a confidentiality stipulation and order ... is in place." 2018 WL 557915, at *9.

Here, there is not only an existing confidentiality order, ECF 82, but Defendants have already marked the entire production as "CONFIDENTIAL." Their concern is therefore not about whether the information may become public but about providing the names of those who have unlawfully invaded reproductive health clinics to Plaintiff at all. Of course, Defendants' conspiracy theory about a non-existent "enemies list" supposedly maintained by the Office of the New York State Attorney General is both absurd on its face and simply not a basis to withhold responsive information in discovery.

Courts in New York have made clear, "To the extent anonymity is used to mask violations of the law, 'it is unprotected by the First Amendment.'" *People of the State of New York v. Vdare Foundation, Inc.,* No. 453196/2022, 2023 WL 360633, at *4 (N.Y. Sup. Ct. Jan. 23, 2023) (citing *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010). In *Vdare,* this same argument—that an organizational defendant may withhold the identities of individuals involved in their illegal activity from the government in civil litigation—was soundly rejected. The court not only rejected the defendant's claims of political persecution but also noted that the claimed concerns

4

about exposure of individuals' identities were unwarranted, given that the OAG had offered to enter into a confidentiality order. *Vdare,* 2023 WL 360633, at *4. Notably, this ruling was not only upheld on appeal in state court, 224 A.D.3d 516, 205 N.Y.S.3d 348, *appeal dismissed*, 41 N.Y.3d 1009, 237 N.E.3d 818 (2024), but Defendants' efforts to end run around it by moving to quash the subpoena on the same basis in federal court was rejected by the SDNY, and upheld by the Second Circuit. *Vdare Found., Inc. v. James*, No. 1:22-CV-1337, 2023 WL 5959553 (N.D.N.Y. Sept. 13, 2023), *aff'd,* 162 F.4th 77 (2d Cir. 2025).

The redacted material is responsive and nonprivileged and may not be withheld based on privacy or sensitivity concerns, in light of the confidentiality order in place. Nor is there any burden associated with producing any of this material. Plaintiff respectfully requests that Defendants Red Rose Rescue, Connolly, Goodman, Hinshaw, and Moscinski be ordered to re-produce the documents without redactions, at which point it can evaluate whether the production is sufficient to resolve its dispute over some or all of its document requests.

## II. Defendants Must Provide Basic Information About Other Sources of ESI

In addition to producing documents that are responsive to only two of four outstanding discovery requests, Defendants produced documents only from their email addresses and text messages. They did not search any of their social media accounts, and they refused to answer when asked about whether they used any direct messaging services on social media. Instead, they expressed outrage about even being asked questions about these potential sources of electronically-stored information. These sources are clearly within the proper scope of discovery.

Plaintiff respectfully requests that Defendants be ordered to provide information about other potential sources of responsive documents in their possession.

### III. Defendant Gies Must Produce Responsive Documents

Defendants Gies continues to refuse to produce any documents, and she did not respond to Plaintiff's repeated question about whether she had a counter-proposal for an ESI production. In her opposition brief, Defendant Gies simply argues that "Gies has searched enough," because she entered several terms into the search bar of her email. This Court has already rejected this position and should do so again.

Defendant Gies's monthslong refusal to produce any documents in discovery on remedies—despite stipulating to do so—must come to an end. Plaintiff respectfully requests that Defendant Gies be ordered to produce all documents generated by its proposed search terms, ECF 165-1,

### IV. Defendants Gies and Moscinski Must Provide Information about their Allegedly Unavailable Encrypted Email Accounts

The recent production from the other Defendants, made since the filing of Plaintiff's motion to compel, raises serious concerns about whether Defendants Gies and Moscinski have met their preservation obligations in this case.

In numerous emails, Defendants Moscinski and Gies instruct participants in Rescue to respond to them solely by an encrypted email service called Protonmail—and specifically, not on Gmail, or even on the phone—when they are discussing plans for Rescues. (Goodman 26, 45, 70). At one point, Defendant Moscinski even instructs recipients of an email he accidentally sent from his Protonmail to a Gmail account to delete the message. (Goodman 56). Time and again, the Red Rose Rescue agents planning their unlawful clinic invasions discuss trying to cover up any evidence of them. Another participant—whose identity is redacted—writes, "Let's talk more. But without a paper trail or electronic trail. Lol." (Goodman 53).

This preservation issue first came to Plaintiff's attention about six months ago, when the parties met and conferred about discovery on remedies. At that time, Defendant Gies claimed that she couldn't access her Protonmail because she forgot her password in 2022, and she made no further attempts to regain access after that—not when this lawsuit was filed in 2023 or at any time during the last two and half years of litigation. Since then, Plaintiff has asked numerous times what steps she took to try to re-set her password or otherwise determine that it could not be done, and she has simply reiterated that she "made no further attempts to gain access" to access the email after forgetting her password in 2022. (Oddly, she also claimed that she also forgot her username in 2022—and did not simply ask Defendant Moscinski or others for it, given that they had written to her at that address—but now she says she has recalled it.)

Defendant Gies also claims that the account was "deactivated by Protonmail, presumably in 2022 when she was unable to re-set her password," though she provides no specific timeline for the deletion. The company's website makes clear that, while it may delete accounts that have been inactive for a year—and it would give multiple warnings before doing so—it provides a 2-year period for inactive accounts before it may begin deleting any messages.[2] By her own account, Defendant Gies used this account specifically to hide messages about planning Rescues well into 2021; therefore, Protonmail would not have deleted her account by the date of filing this lawsuit in June 8, 2023. The recent production confirms this account: at least as late as August 25, 2021, Defendant Gies instructs those involved in planning a Rescue she dubbed

---

[2] "If you had a Proton Account before April 9, 2024, you will receive an additional one-year grace period for a limited amount of time, meaning your account can be inactive up to a period of 24 consecutive months before the effects of this policy apply." https://proton.me/support/inactive-accounts.

"Operation Secret Fire," to write her with any questions about the plans for the Rescue "**thru Proton.**" (Goodman 81) (bold in original).

Defendant Moscinski, for his part, has provided even less detail about his Protonmail account. He simply informed Plaintiff that he "does not have access to the Proton emails," and did not respond to Plaintiff's question about when he lost access or what efforts he undertook, if any, to regain access or otherwise preserve these documents upon the filing of this lawsuit.

Given these Defendants' specific statements about using this encrypted email service in order to hide messages about secret plans for clinic invasions, Plaintiff is entitled to straight answers about what steps they took to preserve these documents. Whether Plaintiff is entitled to sanctions or, at the least, an adverse inference about what those hidden documents contained will depend on those answers.

Defendant Moscinski has suggested that he need not undertake any effort to search for Proton emails because, he claims, some of the emails he sent from that account are contained in the recent production from the other Defendants. Of course, with the excessive redactions, Plaintiff cannot see what email addresses are included in the other Defendants' recent production and has no way of knowing which emails are from what account (or often, from what sender). Nor does the production include any of the messages from Red Rose Rescue participants that volunteers are repeatedly told to send directly to Defendants Moscinski and Gies, solely on their Protonmail accounts.

Plaintiff respectfully requests that the Court order Defendants to provide detailed—if not sworn—explanations of what steps they took to preserve relevant documents once this case was filed.

8

V.     **Defendants Must Respond to Plaintiff's Limited Interrogatories**

The interrogatories at issue request the names of only four individuals who participated in coordinated, illegal trespass designed to interfere with the provision of reproductive health services.  As Plaintiff has repeatedly explained, those individuals may be bound by an injunction sought as a remedy in this case, which binds Defendant Red Rose Rescue.  Two of those individuals appear in an exhibit attached to Plaintiff's motion for summary judgment, and two were identified by counsel for Defendants, in describing the universe of people who might be relevant to Plaintiff's claims.

Defendants' misguided effort to conflate Plaintiff's limited interrogatories in civil discovery with either global, statutory disclosure requirements or overbroad subpoenas for information in a law enforcement investigation still fails.  As Plaintiff has explained, the principles espoused in those cases—that information about individuals is relevant and subject to discovery when it is tied to the facts underlying a legal claim—in fact supports the disclosure of these names.  The court in *Vdare* has also rejected precisely the flawed argument Defendants have made here:

> Respondent's reliance on *Americans for Prosperity v. Bonta*, 141 S.Ct. 2373 (2021), is equally unavailing. That decision concerned only donor disclosures in statewide annual filing requirements, while expressly permitting subpoenas seeking the same information as part of a targeted investigation.

*Vdare,* 2023 WL 360633, at *4.  The discovery requests here are aimed at identifying specific individuals who will be covered by the remedies ordered in this case.

Finally, Defendant Moscinski continues to maintain that he faces a plausible fear of federal criminal prosecution for trespassing inside a reproductive health clinic, despite being pardoned by the current federal administration for similar, if not more extreme, conduct.  Even Defendants themselves do not believe this to be the case; in the other Defendants' recent

9

production, they observe that "the new DOJ will not prosecute pro-lifers under FACE." (Connolly 84).

Defendants counter-factual claims and misstatements of the law cannot justify their continued refusal to provide this basic, non-privileged information. Plaintiff respectfully requests that this Court order Defendants to respond fully to its two interrogatories.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court grant an Order compelling (1) Defendants Red Rose Rescue, Hinshaw, Connolly, Goodman, and Moscinski to provide unredacted versions of their recent document production; (2) all Defendants to provide information about what, if any, other sources of potentially responsive ESI they possess; (3) Defendant Gies to perform a comprehensive ESI review, including running the proposed search terms at ECF 165-1; (4) Defendants Gies and Moscinski to explain what steps they took to preserve documents related to this lawsuit upon its filing, including in their Protonmail accounts; and (5) all Defendants to respond to Plaintiff's September 12, 2025 interrogatories, along with any other relief the Court deems reasonable.

Dated: New York, New York
January 13, 2026

                                                LETITIA JAMES
                                                Attorney General of the State of New York

                                          By:    /s/ Sandra Pullman
                                                      Sandra Pullman
                                                      Senior Counsel, Civil Rights Bureau
                                                      Heather McKay, Assistant Attorney General
                                                      Julia Toce, Assistant Attorney General
                                                      Zoe Ridolfi-Starr, Assistant Attorney General
                                                 Office of the New York State Attorney General
                                                      28 Liberty St., New York, NY 10005